[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14980
_____

D.C. Docket No. 1:16-cv-20212-JLK


MSPA CLAIMS 1, LLC,
a Florida limited liability company, as assignee of
Florida Healthcare Plus, on behalf of itself and
all Other similarly situated
Medicare Advantage Organizations in the State of Florida,

Plaintiff - Appellant,

versus

KINGSWAY AMIGO INSURANCE COMPANY,
a Florida Profit Company,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 13, 2020)

Before JORDAN and NEWSOM, Circuit Judges, and WRIGHT,* District Judge.

NEWSOM, Circuit Judge:

This case might have begun with a car wreck, but as it presents itself to us it has essentially nothing to do with the underlying accident or the resulting injuries. Instead, it turns on a careful examination of the often-convoluted rules governing the federal Medicare program—and in particular the Medicare Secondary Payer Act, 42 U.S.C. § 1395y. Among many others—several of which we will explore—that Act contains a provision that states as follows:

> Notwithstanding any other time limits that may exist for filing a claim under an employer group health plan, the United States may seek to recover conditional payments in accordance with this subparagraph where the request for payment is submitted to the entity required or responsible under this subsection to pay with respect to the item or service (or any portion thereof) under a primary plan within the 3-year period beginning on the date on which the item or service was furnished.

§ 1395y(b)(2)(B)(vi).

The question we must decide is whether this provision imposes a timeliness requirement with which the government (or in our case a private entity providing Medicare benefits) must comply as a prerequisite to filing suit to seek

---

* Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas, sitting by designation.

reimbursement for payments that it made on behalf of a Medicare beneficiary.  The

district court held that it does.  We disagree and will reverse.

# I

## A

Congress created the Medicare program to provide insurance for those over

the age of 65.  *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 875 (11th Cir.

2003).  In some instances, though, Medicare isn't the only entity that will end up

paying for a beneficiary's healthcare costs.  If, for instance—as here—a Medicare

beneficiary is injured in an automobile accident caused by another driver, both

Medicare and the other driver's insurance company could be on the hook for some

portion of the beneficiary's medical bills.  *MSPA Claims 1, LLC v. Tenet Fla., Inc.*,

918 F.3d 1312, 1316 (11th Cir. 2019).  Originally, Medicare was deemed the

"primary" payer in these instances—meaning that it paid first—and private

insurers were "secondary" payers—meaning that they covered any remainder.  *Id.*

That changed in 1980.  To "curb the rising costs of Medicare," *Humana*

*Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1234 (11th Cir. 2016),

Congress enacted the Medicare Secondary Payer Act, 42 U.S.C. § 1395y, which

flipped the payment order, such that private insurers became the primary payers

and Medicare became (as the Act's name indicates) the secondary payer, *see Tenet*,

918 F.3d at 1316.  In our car-accident example, therefore, the other driver's

3

insurance company now pays first and Medicare covers any remaining expenses. So, as a general matter the Act now prohibits Medicare from paying for a beneficiary's treatment to the extent that a primary payer is responsible. § 1395y(b)(1)–(2); *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1355 (11th Cir. 2016). There is, though, an exception: When a primary-payer plan doesn't or can't pay "promptly"—say, for instance, when it is contesting liability— Medicare can make a conditional payment on behalf of a beneficiary, for which it can later seek reimbursement from the primary plan. § 1395y(b)(2)(B)(i)–(ii); *Tenet*, 918 F.3d at 1316.

If Medicare pays and then seeks reimbursement, only to be refused, the United States can sue the primary plan (or a medical provider) to recover its payment under what we'll call the Act's "government cause of action," codified at § 1395y(b)(2)(B)(iii). *See Tenet*, 918 F.3d at 1317. Section 1395y(b)(2)(B)(iii) contains a statute of limitations that requires the government to sue within three years of the date that Medicare receives notice of a primary payer's responsibility to pay. The Act also contains what we'll call a "private cause of action," codified at § 1395y(b)(3)(A), which is available to Medicare beneficiaries and other private entities, who "are often in a better position than the government to know about the existence of responsible primary plans" that haven't reimbursed Medicare or paid a beneficiary's healthcare provider. *Tenet*, 918 F.3d at 1316; *see also Humana*, 832

F.3d at 1234.  The private cause of action rewards successful plaintiffs with double damages—after "giv[ing] Medicare its share of the recovery, [the plaintiff] can keep whatever is left over."  *Tenet*, 918 F.3d at 1316.  Unlike the government cause of action, the private cause of action contains no statute of limitations.

So far, so good (?).  But there's more—another layer of complexity.  In 1997, in yet another effort to make Medicare more efficient, Congress enacted Medicare Part C, or the "Medicare Advantage" program.  *Humana*, 832 F.3d at 1235.  This amendment created Medicare Advantage Organizations—private insurance companies that provide Medicare benefits in exchange for fixed fees from the Centers for Medicare and Medicaid Services.  *Id.*  Now, beneficiaries can choose to receive Medicare benefits through either the traditional, government-run Medicare program or a Medicare Advantage plan.  The legislation creating Medicare Part C made MAOs—like Medicare itself—secondary payers.  *See* 42 U.S.C. § 1395w-22(a)(4) (stating that an MAO may charge a primary plan when a payment "is made secondary pursuant to section 1395y(b)(2)"); *Humana*, 832 F.3d at 1237–38.  We have since recognized that MAOs—again, like Medicare—can sue under the Medicare Secondary Payer Act to recover from primary plans that should pay, but don't.  *Humana*, 832 F.3d at 1238.  MAOs, however, must utilize the Act's private cause of action, rather than the government cause of action. *Tenet*, 918 F.3d at 1317.

**B**

With that statutory background in mind, we turn to the facts of this case, which began with a car wreck on April 29, 2012. One of the people injured in the accident was a Medicare beneficiary who received her benefits from an MAO—Florida Healthcare Plus—that later assigned its claims to our appellant, MSPA Claims 1.[1] The other party involved in the accident was insured by our appellee, Kingsway Amigo Insurance. The Medicare beneficiary obtained medical treatment for her accident-related injuries between April 29, 2012 and July 26, 2012, and Florida Healthcare made $21,965 in payments on her behalf. On March 28, 2013, the beneficiary settled a personal-injury claim with Kingsway and received a $6,667 settlement payment.

After MSPA was assigned Florida Healthcare's recovery rights, it sought information from Kingsway regarding the accident. Kingsway sent a letter on November 12, 2015 informing MSPA of the settlement and another letter on November 20 attaching the settlement agreement. This, MSPA contends, was the first notice that it received of Kingsway's responsibility as a primary payer. *See* Oral Argument at 4:18. In a letter dated November 23, 2015, MSPA demanded reimbursement from Kingsway for the conditional payments that Florida

---

[1] Florida Healthcare first assigned its recovery rights against any liable primary payers to La Ley Recovery Systems, which, in turn, assigned those rights to MSPA in February 2015.

Healthcare had made on the Medicare beneficiary's behalf. When Kingsway

didn't pay, MSPA—as the Act contemplated might be necessary—took the dispute

to court.

## C

On December 7, 2015, less than a month after it contends it received notice

of the settlement, MSPA sued Kingsway under the Act's private cause of action,

§ 1395y(b)(3)(A).[2] MSPA argued that Kingsway was the primary payer and

Florida Healthcare was the secondary payer, giving MSPA—as Florida

Healthcare's assignee—the right to recover. MSPA asserted that Kingsway should

have investigated whether the beneficiary received Medicare benefits (*i.e.*, whether

it could be a primary payer) but failed to do so. Once Kingsway settled its claim

with the beneficiary, MSPA contended, Kingsway was obligated—as the primary

payer—to reimburse Florida Healthcare's conditional payments.

After some preliminary skirmishing—most of which is irrelevant to our

analysis here—the district court decided that MSPA had standing as a valid

assignee of Florida Healthcare. Kingsway eventually filed a motion for judgment

on the pleadings, arguing that MSPA's claim was stale because it didn't comply

with the Act's claims-filing provision, § 1395y(b)(2)(B)(vi). That provision—

---

[2] MSPA originally filed its complaint in Florida state court, but Kingsway removed to the United States District Court for the Southern District of Florida.

which we quoted in full earlier—states in relevant part that "[n]otwithstanding any other time limits that may exist for filing a claim under an employer group health plan, the United States may seek to recover conditional payments . . . where the request for payment is submitted to the entity required or responsible . . . within the 3-year period beginning on the date on which the item or service was furnished." Because the complaint alleged that services were provided to the beneficiary between April 29 and July 26, 2012, Kingsway contended that a request for reimbursement had to have been made before July 26, 2015, which it wasn't.

The district court referred the case to a magistrate judge, who recommended that Kingsway's motion be denied. The magistrate judge concluded that "Section 1395y(b)(2)(B)(vi)"—*i.e.*, the claims-filing provision—"does not contemplate litigation" and therefore didn't operate to bar MSPA's suit, as a statute of limitations would. The magistrate judge instead looked to the Act's government cause of action, § 1395y(b)(2)(b)(iii), which states that an action can't be brought by the United States "unless the complaint is filed not later than 3 years after the date of the receipt of notice of a settlement, judgment, award, or other payment . . . relating to such payment owed." Because MSPA didn't become aware of Kingsway's responsibility to reimburse until November 20, 2015, when Kingsway sent it the settlement agreement, it had three years from that date to sue for reimbursement, which it did. And in any event, the magistrate judge concluded

8

that the timeliness issue shouldn't be decided on the pleadings, since Kingsway could assert any statute-of-limitations argument as an affirmative defense.

The district court rejected the magistrate judge's recommendation and granted Kingsway's motion. Without ever reaching the question whether MSPA filed suit within the three-year period prescribed by the statute of limitations in the government cause of action, the district court held that the claims-filing provision, § 1395y(b)(2)(B)(vi), "plainly and unambiguously requires" the government to request reimbursement from a primary plan within three years of the date on which the Medicare beneficiary received treatment "as a prerequisite for seeking to recover conditional payments." And because MAOs "stand[] in the shoes of the government in bringing" suit under the Act, the district court held that they are likewise bound by the claims-filing provision. The district court held that MSPA's claim was therefore stale because it didn't comply with what the court (somewhat confusingly) called "the three-year limitation requirement."

This appeal followed.

## II

The central issue in this appeal is whether MSPA's failure to comply with the Medicare Secondary Payer Act's claims-filing provision, § 1395y(b)(2)(B)(vi),

9

is fatal to its suit against Kingsway, as the district court concluded.[3]  We hold that it is not.  To explain why, we examine two key provisions in turn: first, the Act's private cause of action, pursuant to which we have held MAOs must sue for reimbursement; and second, the claims-filing provision itself.  Our analysis reveals that nothing in the relevant statutory language and structure, or in our precedent interpreting either provision, suggests that MAOs must comply with the claims-filing provision (in the district court's words) as a "prerequisite" to seeking reimbursement of conditional payments.

Before diving in, a brief word about what this case is *not* about.  Although the district court spoke in terms of timeliness—holding that MSPA's suit was untimely under what it called the claims-filing provision's "three-year limitation requirement"—Kingsway hasn't raised a statute-of-limitations defense.  In its brief, Kingsway stated that "[t]his is not a dispute over which statute of limitations applies," Br. of Appellee at 24, and at oral argument Kingsway's counsel clarified that his client "ha[s] not made a statute of limitations argument," Oral Argument at 15:05.[4]  Section 1395y(b)(2)(B)(vi)'s claims-filing provision "is not a statute of

---

[3] We review district court orders granting judgment on the pleadings de novo.  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).  In deciding whether judgment on the pleadings is appropriate, "we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party."  *Id.*

[4] In fact, the parties seem to agree that although (or perhaps because) the Act's private cause of action doesn't contain its own statute of limitations, suits brought under that provision are governed by the three-year notice-based statute of limitations contained in the government cause of action, § 1395y(b)(2)(B)(iii).  *See* Br. of Appellant at 24 ("MSPA's recovery lawsuit is subject

10

limitations," Kingsway contends, but merely part of the Act's "ordinary billing" scheme—with which, it says, MSPA was required to but failed to comply. Br. of Appellee at 3. Accordingly, the lone question presented is whether compliance with the claims-filing provision is a prerequisite to filing suit under the Act's private cause of action.

## A

We start with the Act's private cause of action. It reads, in full:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

§ 1395y(b)(3)(A). In *Humana*, we held that MAOs can sue under this provision to recover from primary plans that fail to reimburse their conditional payments. 832 F.3d at 1238. We reasoned that the private cause of action "is broadly available 'in

to the statute of limitations set forth in 42 U.S.C. § 1395y(b)(2)(B)(iii) . . . ."); Supplemental Br. of Appellee at 4–5 ("It seems highly unlikely—and no decision suggests—that Congress intended that the United States would have to bring its reimbursement claims within three years of any settlement, judgment award or other payment but that private plaintiffs would have a different or longer period within which to bring their reimbursement claims."). MSPA contends that its suit was timely under this statute of limitations because (as we have explained) it first received notice of Kingsway's payment responsibility in November 2015 and filed suit the very next month. *See* Oral Argument at 4:18. Even if Kingsway were to dispute when MSPA received (or should have received) the requisite notice, *see id.* at 15:08 (Kingsway stating that MSPA's suit "may or may not be timely" under § 1395y(b)(2)(B)(iii)'s limitations period), that's a factual question that can't be decided at the judgment-on-the-pleadings stage. *See, e.g.*, *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001) ("Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.").

11

the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)'" and doesn't "place[] any other restriction on the class of plaintiffs" who can invoke it.  *Id.* (quoting § 1395y(b)(3)(A)).  Because an MAO has a "statutory right to charge a primary plan" under the Medicare Advantage program, the MAO suffers an injury when a primary plan fails to reimburse it and can vindicate its right to recovery by suing under the Act's private cause of action.  *Id.* (citing § 1395w-22(a)(4)).

We've recognized (as relevant here) only two limits on the private cause of action.  First, in order for an MAO (or any other plaintiff, for that matter) to utilize the private cause of action, the would-be primary payer's responsibility must be "demonstrated" in some way prior to the suit for reimbursement.  *Glover v. Liggett Grp.*, 459 F.3d 1304, 1309 (11th Cir. 2006).  We arrived at that conclusion in *Glover*—which pre-dated *Humana*—through a close reading of the private cause of action's text, which provides that an action may be brought "in the case of a primary plan which *fails* to provide for primary payment (or appropriate reimbursement) in accordance with . . . (2)(A)."  *Id.* at 1308 (emphasis in original) (quoting § 1395y(b)(3)(A)).  Paragraph (2)(A), in turn, forbids Medicare from paying for services when a primary plan is responsible, "except as provided in subparagraph (B)."  *Id.*  And finally, subparagraph (B) states that a primary plan must reimburse Medicare "*if it is demonstrated* that such primary plan *has or had a*

12

*responsibility* to make payment with respect to such item or service." *Id.* at 1309 (emphasis in original) (quoting § 1395y(b)(2)(B)(ii)). Until responsibility is "demonstrated," therefore, the "obligation to reimburse Medicare does not exist" and it can't be said that the primary plan—as required by the private cause of action's language—"'failed' to provide appropriate reimbursement." *Id.* Thus, § 1395y(b)(2)(B)(ii)'s demonstrated-responsibility requirement is a prerequisite to filing a private lawsuit under § 1395y(b)(3)(A).

Second, and more recently, in *Tenet*, we confirmed what the private cause of action's text already makes clear—that plaintiffs invoking it may "only sue primary plans when they fail to pay," and not other entities such as medical providers. 918 F.3d at 1320–21. Once again, we relied on the private cause of action's language, which allows suit "in the case of *a primary plan* which fails to provide for primary payment (or appropriate reimbursement)." *Id.* at 1320 (emphasis in original) (quoting § 1395y(b)(3)(A)). Separately, and importantly here, *Tenet* also confirmed—in the course of rejecting the contention that a series of cross-references allowed the plaintiff there to sue a medical provider—that "[w]e have read [§ 1395y(b)(2)(B)] into the private cause of action only to the very limited extent of determining when an entity's status as a primary plan has been 'demonstrated.'" *Id.* at 1321–22 (citing *Glover*, 459 F.3d at 1308–09).

Okay, time for a deep breath and a summary. The law is clear that an MAO may avail itself of the Act's private cause of action, *see Humana*, 832 F.3d at 1238, so long as (1) responsibility has been "demonstrated," *see Glover*, 459 F.3d at 1309, and (2) the MAO is suing a primary plan, *see Tenet*, 918 F.3d at 1322–23. MSPA contends that it has checked the necessary boxes. At the motion-to-dismiss stage, the district court held (and for purposes of this appeal no one seems to seriously dispute) that MSPA had standing to sue as a valid assignee of an MAO. MSPA also alleges that Kingsway's responsibility has been "demonstrated" by its settlement of the underlying personal-injury suit and that Kingsway is a primary payer subject to suit under the private cause of action. *See* Second Amended Complaint at 19, 29. Given the case's procedural posture, of course, we must accept as true "all material facts alleged in [MSPA's] pleading." *Perez*, 774 F.3d at 1335.

So, based on our precedent interpreting the private cause of action, MSPA seems to have done everything it needed to do.

## B

What, though, about § 1395y(b)(2)(B)(vi)'s claim-filing provision? Does it impose an additional prerequisite to an MAO's suit under the private cause of action—another box to be checked? Kingsway thinks that it does: under its reading of the claims-filing provision, if an MAO doesn't seek reimbursement

14

from a primary plan within three years of the date on which the beneficiary received treatment, it can't later sue that plan to recover.[5] We disagree. The Medicare Secondary Payer Act's plain language and structure lead us to hold that compliance with the claims-filing provision is not a prerequisite to suit.

Before explaining why, we flag one wrinkle at the outset: It's not self-evident (to us, anyway) that the claims-filing provision even applies to MAOs, like MSPA's assignor here. After all, by its terms—which we've previewed already and will reiterate shortly—it applies *only* to "the United States." § 1395y(b)(2)(B)(vi). To be sure, we've recognized some degree of functional parity between private MAOs and government-run Medicare. *See, e.g.*, *Tenet*, 918 F.3d at 1317 (stating that "MAOs stand in the shoes of Medicare"). But just as surely, we've recognized that there remain important differences between MAOs and Medicare, *id.* (stating that "*unlike* Medicare, MAOs must rely on the private cause of action when they sue"), and that not every provision in the Act that applies to Medicare necessarily covers MAOs, *id.* at 1322 (stating that § 1395y(b)(2)(B) has been read into the private cause of action in only a "very limited" way).

---

[5] Kingsway has also explained that its interpretation of the claims-filing provision would apply with equal force to the government. *See* Oral Argument 21:45 ("The government . . . *has to* seek recovery of those payments [under the claims-filing provision] within three years, *without exception*" (emphasis added)).

We conclude that we needn't resolve this uncertainty here. As we will explain, the claims-filing provision's text and its relation to other provisions indicate that it doesn't operate as any sort of prerequisite—for anyone. Rather than imposing a strict requirement, the provision simply allows Medicare to overcome any time limits prescribed by an employer's group health plan that might otherwise prevent it from requesting reimbursement. Put simply, the claims-filing provision is a "get to," not a "have to." Because the claims-filing provision doesn't operate as a prerequisite to suit brought by the United States—to which we *know* it applies—it likewise doesn't operate as a prerequisite to an MAO's suit under the private cause of action. We can therefore assume (without deciding) that the claims-filing provision applies to MAOs, such as MSPA's assignor here, for the limited purpose of addressing Kingsway's argument that the provision imposes a prerequisite to MSPA's suit.

**1**

As we did with the private cause of action, we start with the text. In full, the claims-filing provision reads as follows:

> Notwithstanding any other time limits that may exist for filing a claim under an employer group health plan, the United States may seek to recover conditional payments in accordance with this subparagraph where the request for payment is submitted to the entity required or responsible under this subsection to pay with respect to the item or service (or any portion thereof) under a primary plan within the 3-year period beginning on the date on which the item or service was furnished.

§ 1395y(b)(2)(B)(vi).  Two textual indicators lead us to conclude that the claims-filing provision doesn't impose a prerequisite to filing suit: (1) the dependent "notwithstanding" clause and (2) the permissive term "may."

First, the "notwithstanding" clause.  The claims-filing provision states that "[n]otwithstanding any other time limits that may exist for filing a claim under an employer group health plan," the government can pursue conditional payments made on behalf of Medicare beneficiaries.  MSPA contends that this "notwithstanding" clause shows that the claims-filing provision simply allows Medicare (or, on our assumption, an MAO) to circumvent time limits that an employer's group health plan might otherwise place on claims.  We agree.

"The ordinary meaning of 'notwithstanding' is 'in spite of,' or 'without prevention or obstruction from or by.'"  *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 939 (2017) (citing Webster's Third New International Dictionary 1545 (1986) and Black's Law Dictionary 1091 (7th ed. 1999)); *see also Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 893 (2018) (explaining that a "notwithstanding" clause indicated that the main clause "operates as an exception" to the provisions cited in the dependent "notwithstanding" clause that were otherwise applicable).  Accordingly, we can fairly read the claims-filing provision to say, in its simplest form, that "[w]ithout . . . obstruction from" any employer's group health plan's time limits, the United States may file a claim during the three-

17

year period after medical services are rendered.  Another way to think about the "notwithstanding" phrase is that it "merely shows which provision prevails in the event of a clash."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 126 (2012).  In the event of a clash between a provision in an employer's group health plan that purports to limit when a claim may be filed and the three-year statutory period, the latter prevails.

Next, the permissive "may."  MSPA contends (and the magistrate judge agreed) that the word "may" in the phrase "the United States *may* seek to recover conditional payments," § 1395y(b)(2)(B)(vi) (emphasis added), demonstrates that Congress didn't mean to condition anything on compliance with the claims-filing provision—and certainly not the right to file suit to recover conditional payments. The claims-filing provision simply permits the government (or again, on our assumption, an MAO) to do something that it might not otherwise be able to do.  In Kingsway's (and the district court's) view, the "may" language is mandatory, not permissive, and implies that if a request isn't made within the three-year period beginning when medical services were provided, the government (or an MAO) "*may not* recover the conditional payments."  Br. of Appellee at 23.

No.  Words in a statute must be interpreted according to their ordinary meaning and "may" cannot, by any rendering, mean "must."  When a statute uses the word "may," it "implies that what follows is a permissive rule."  *Ela v.*

18

*Destefano*, 869 F.3d 1198, 1201 (11th Cir. 2017) (citing Scalia & Garner, *supra*, at 112); *see also Dietrich v. Key Bank, N.A.*, 72 F.3d 1509, 1515 (11th Cir. 1996) (concluding that "[b]ecause the language of the Act is permissive—i.e., the Act uses the permissive 'may' rather than exclusive 'must' with respect to its enforcement procedures," the federal law was not pervasive enough to occupy the field).  For example, a statutory provision stating that a court "may award" damages indicates that "the award of *any* damages is permissive and discretionary."  *Destefano*, 869 F.3d at 1201–02 (quotation omitted).  So again, the claims-filing provision is a "get to," not a "have to."  Even if an employer's group health plan purports to impose more stringent conditions, the United States (or again, an MAO) *may—i.e.* gets to, is allowed to, is permitted to, etc., but doesn't have to—file a claim within three years of when the services were provided.

**2**

When interpreting a statutory provision, we look not only to its text, but also to its "place in the overall statutory scheme," since "[o]ur duty . . . is to construe statutes, not isolated provisions."  *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (quotations omitted).  Kingsway's reading of the claims-filing provision—as a mandatory prerequisite to filing suit—would lead to structural oddities within the Medicare Secondary Payer Act.

The first problem arises when we consider the demonstrated-responsibility

19

requirement. As already explained, Medicare or an MAO can sue a primary plan for reimbursement only if, under § 1395y(b)(2)(B)(ii), "it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." Responsibility can be "demonstrated," among other ways, through a judgment or (as here) a settlement agreement. *Id.* But until responsibility is demonstrated, the "obligation to reimburse Medicare does not exist" and, in the case of an MAO, a private cause of action will not lie. *See Glover*, 459 F.3d at 1309.

Kingsway envisions the reimbursement-request chronology unfolding as follows: An MAO must first make a request for payment to a primary plan within the three-year period prescribed by § 1395y(b)(2)(B)(vi)'s claims-filing provision. *Then*, if the primary plan disputes its obligation to pay, its responsibility must be demonstrated in some way, such as by a judgment or settlement payment. *Then*, and only then, the MAO can sue.

We think Kingsway's reading of the claims-filing provision creates significant intra-Act tension and perverse incentives. It's easiest to show why with an example. Imagine that a Medicare beneficiary who receives benefits from an MAO is involved in a car accident with two other drivers. The beneficiary sues both drivers seeking compensation for her injuries. The litigation and accompanying settlement discussions take time, and in the interim the MAO picks

20

up the bill for the beneficiary's injuries.  At that point, it hasn't been decided whether either (or both) of the other drivers will be liable, and therefore which (if either) of the other drivers' insurance companies will have to pay.  Even so, under Kingsway's reading of the claims-filing provision, if the MAO doesn't request reimbursement within three years of the beneficiary obtaining medical treatment, it can't later sue to recover its conditional payments.  Accordingly, the only way for the MAO to protect itself would be to file a reimbursement request with *both* companies, even if it has absolutely no idea whether either or both are liable—and then, if either or both refuse to pay, wait for someone's responsibility to be demonstrated by a judgment or settlement before suing.  That scheme would seem to incentivize MAOs to file as many reimbursement requests as necessary with entities that might *possibly* be responsible, simply in order to avoid being barred from suing later.

The claims-filing provision doesn't support—let alone encourage—such a shotgun approach.  In fact, it suggests quite the opposite.  Back to the text.  The claims-filing provision states that "the United States may" request reimbursement from "the entity *required or responsible under this subsection* to pay with respect to the item or service (or any portion thereof) under a primary plan." § 1395y(b)(2)(B)(vi) (emphasis added).  The provision itself presumes that the government (or again, an MAO) would make a request only if the entity was

"required or responsible under this subsection"—meaning the whole of § 1395y(b), including that section's demonstrated-responsibility requirement—to pay. Were we to interpret the claims-filing provision to require a reimbursement request to be made *before* responsibility is demonstrated in order to preserve a right to sue later, we would have to ignore its text. We decline to do so.

The second problem arises when we consider the three-year statute of limitations in the government cause of action, § 1395y(b)(2)(B)(iii), which all parties seem to agree would apply (via borrowing) to an MAO's suit brought under the Act's private cause of action. *See supra* at 11 n.4. Suppose that an MAO doesn't know that a primary plan exists (or responsibility isn't demonstrated in some way) within three years of the date that the beneficiary receives medical treatment. (That, incidentally, is an entirely realistic assumption; as we have explained elsewhere, Medicare often "pays . . . 'in the dark'—it does not know, and *cannot* know, whether someone else will pay." *Baxter*, 345 F.3d at 901; *see also id.* at 901 n.30 (recognizing that, as a general matter, "HHS and Congress have repeatedly flagged Medicare's inability to ascertain the existence of alternative sources of coverage as a weakness in the secondary payer program")). Even if a lawsuit would otherwise be timely under the statute of limitations' notice-triggered period—as measured from the date that the MAO learned of the primary plan's obligation to pay—it would, on Kingsway's reading, be barred for

22

failure to comply with the claims-filing provision.  The claims-filing provision would thus be transformed into a limitations period of sorts—despite its "notwithstanding" clause and permissive "may" language, *see supra* at 17–20— and § 1395y(b)(2)(B)(iii)'s notice-based statute of limitations would be rendered meaningless.  *See Black Warrior Riverkeeper, Inc. v. Black Warrior Minerals, Inc.*, 734 F.3d 1297, 1303 (11th Cir. 2013) ("[A] court should . . . avoid interpreting a provision in a way that would render other provisions of the statute superfluous.").[6]

* * *

In sum, we hold that the Medicare Secondary Payer Act's claims-filing provision, § 1395y(b)(2)(B)(vi), doesn't operate to bar MSPA's claim here. Though we needn't decide whether the claims-filing provision applies to MAOs, its text and relation to other provisions in the Act indicate that compliance with its terms is not a precondition to filing suit.

---

[6] In addition to arguing that MSPA's claim is barred by the claims-filing provision, Kingsway contends in the alternative that the judgment on the pleadings should be affirmed on the ground that "MSPA waived its rights" as a secondary payer under § 1395y(b)(2)(B)(v), which provides that "[t]he Secretary may waive (in whole or in part) the provisions of this subparagraph in the case of an individual claim if the Secretary determines that the waiver is in the best interests of the program established under this subchapter."  It's not clear whether this waiver provision— which, like the claims-filing provision, by its text applies only to the "Secretary"—applies to MAOs like MSPA's assignor here.  *See supra* at 15–16.  Even if it does, Kingsway's argument fails because Kingsway hasn't explained whether MSPA "determine[d] that the waiver is in the best interests of the program" and, further, because the waiver provision is phrased permissively—"may"—and there is no indication that MSPA has elected to waive its claim.

## III

The Medicare Secondary Payer Act's private cause of action, § 1395y(b)(3)(A), and our cases interpreting it lead us to conclude that the Act's claims-filing provision, § 1395y(b)(2)(B)(vi), doesn't erect a separate bar that private plaintiffs must overcome in order to sue.  A closer look at the claims-filing provision's text and the Act's structure confirms that conclusion.  Accordingly, the district court erred in granting Kingsway's motion for judgment on the pleadings.

**VACATED AND REMANDED.**