*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRONSON HEALTHCARE GROUP, INC.,

    Plaintiff-Appellee,

v

CONIFER INSURANCE COMPANY,

    Defendant-Appellant.

FOR PUBLICATION
February 02, 2026
11:44 AM

No. 368812
Kalamazoo Circuit Court
LC No. 2020-000203-NO

---

BRONSON HEALTHCARE GROUP, INC.,

    Plaintiff-Appellant,

v

CONIFER INSURANCE COMPANY,

    Defendant-Appellee.

No. 368816
Kalamazoo Circuit Court
LC No. 2020-000203-NO

---

Before: SWARTZLE, P.J., and GARRETT and YATES, JJ.

SWARTZLE, P.J.

When a workmen's compensation insurer does not pay a medical provider for services rendered because there is a dispute over coverage, and Medicare makes a conditional payment under the Medicare Secondary Payer Act (MSPA), 42 USC 1395y *et seq.*, does the provider have a private cause of action for double damages under the MSPA? As explained, as long as the insurer has a good-faith ground for disputing coverage, the service provider does not have a viable cause of action unless and until it is demonstrated that the insurer has a responsibility to pay but fails to do so in a timely manner consistent with the MSPA. The trial court erred in granting summary disposition to plaintiff Bronson Healthcare Group, Inc., and, for the reasons stated here, we vacate and remand with instructions to the trial court to dismiss without prejudice.

-1-

## I. BACKGROUND

Defendant, Conifer Insurance Company, provided workmen's compensation insurance to the Fraternal Order of Eagles, Aerie #299, located in Battle Creek, Michigan. On June 14, 2017, Linda Roach fell and injured her hip while bartending at the Eagles. Bronson Healthcare billed Conifer for Roach's medical expenses, but Conifer denied the claim on the basis that Roach was a volunteer and not an employee covered under the plan. Medicare conditionally paid for Roach's medical expenses.

With respect to Roach's employment status, although there was no question that she had been an employee, Roach had not received a paycheck since April 2017. She and the establishment's manager talked about her going to "volunteer status," and there was evidence that, at the time of the incident, she was considered to be a volunteer. Roach subsequently filed a workmen's compensation claim against Conifer, claiming that she was, in fact, an employee, and Bronson Healthcare intervened.

While the workmen's compensation proceedings were pending, Bronson Healthcare brought a private cause of action against Conifer under the MSPA. Bronson Healthcare initially moved for partial summary disposition on the issue of damages. The trial court partially granted the motion, stating that, in the event that Bronson Healthcare established Conifer's obligation to pay for Roach's medical expenses, Bronson Healthcare would be entitled to double damages under the MSPA.

Months later, the workmen's compensation magistrate issued a written opinion finding that Roach was an employee at the time of her injury, she was injured in the course of her employment, and the medical care that she received was reasonable and necessary. Therefore, the magistrate found that Conifer was responsible for covering her medical expenses and responsible for repaying Medicare. Conifer appealed that administrative decision, and at the time of oral argument in the instant appeals, no decision had yet been rendered by the agency.

While the workers' compensation appeal was pending, the parties filed cross-motions for summary disposition under MCR 2.116(C)(10). Bronson Healthcare argued that the workmen's compensation decision resolved the only open issue in the case—whether Roach was an employee when she was injured—and that collateral estoppel precluded defendant from relitigating the issue. Bronson Healthcare argued that because Roach was an employee covered by Conifer's policy, the insurer violated the MSPA by failing to pay for Roach's medical expenses, entitling Bronson Healthcare to double damages.

Conifer rejected this and argued, as it had done throughout the litigation, that Roach was not an employee at the time of her injury. The insurer recognized that the workmen's compensation magistrate reached a different decision, but it stated that it was not aware of any caselaw making that decision binding on the trial court and requested a stay pending the administrative appeal.

The trial court held a hearing on the parties' motions, and at the conclusion of the hearing, the trial court denied Conifer's request for a stay and granted Bronson Healthcare's motion for summary disposition. With regard to the damages and interest owed, the trial court ordered that

interest run from the date of the workmen's compensation decision and that the damages be offset by the award in the workmen's compensation proceedings.

The parties appealed. In Docket No. 368812, Conifer argues that (1) the trial court erred by granting summary disposition to Bronson Healthcare because the provider had not demonstrated the insurer's responsibility to reimburse Medicare or that the insurer had failed to reimburse Medicare within the meaning of the MSPA; and (2) the trial court erred by finding that Conifer was collaterally estopped by the workmen's compensation magistrate's order, which had been appealed and did not address the issue of statutory damages under the MSPA. In Docket No. 368816, Bronson Healthcare argues that (1) the trial court erred by ordering that the calculation of prejudgment interest occur from the date of the workmen's compensation magistrate's order, rather than the date the complaint was filed; and (2) the trial court erred by offsetting the damages on the basis of the award in the workmen's compensation proceedings.

The matters were consolidated on appeal, *Bronson Healthcare Group, Inc v Conifer Ins Co*, unpublished order of the Court of Appeals, entered January 2, 2024 (Docket Nos. 368812 and 368816), oral argument was held, and the matters are now ripe for decision.

## II. ANALYSIS

Conifer primarily argues on appeal that the trial court erred by granting summary disposition to Bronson Healthcare because, when the provider filed suit, it had not yet been demonstrated that Conifer was responsible for payment. Conifer maintains that, when Bronson Healthcare sued the insurer, there was, at minimum, a good-faith question whether Roach was covered under the policy as an "employee" of the Fraternal Order of Eagles when she was injured. Given this, according to Conifer, any requirement that it cover Roach's medical bills would not have arisen until and unless a court or administrative agency determined that she was, in fact, an employee and not a volunteer.[1] As explained below, defendant's position has merit.

### A. STANDARD OF REVIEW

Plaintiff brought its motion under MCR 2.116(C)(10), as did defendant. "We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020). "When deciding a motion for summary disposition under MCR 2.116(C)(10), we consider the evidence submitted in a light most favorable to the nonmoving party." *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021). Summary disposition is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*.

---

[1] Bronson Healthcare argues that Conifer waived this argument by not raising it below. Throughout the proceedings below, Conifer argued it had no obligation to pay Roach's medical expenses; put another way, that any responsibility it had to pay had not been demonstrated. Parties are generally free to argue a point in a more sophisticated way on appeal, as long as the point is not novel. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020). We conclude that Conifer did not waive or forfeit this issue, and we address its merits here.

To the extent that resolution of these issues requires interpretation and application of statutes, statutory interpretation is a question of law, which we review de novo. *Sherman*, 332 Mich App at 632. Our Legislature and Congress are "presumed to intend the meaning clearly expressed, and this Court must give effect to the plain, ordinary, or generally accepted meaning" of a statute's terms. *D'Agostini Land Co LLC v Dep't of Treasury*, 322 Mich App 545, 554; 912 NW2d 593 (2018). "A statutory provision is ambiguous only if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning." *Id.* (internal quotation marks omitted). "Only when ambiguity exists does the Court turn to common canons of construction for aid in construing a statute's meaning." *Id.* at 554-555.

## B. OVERVIEW OF THE MSPA

"Medicare is a federal health insurance program that provides health insurance benefits to people 65 years of age or older, disabled people, and people with end-stage renal disease." *Stalley v Methodist Healthcare*, 517 F3d 911, 915 (CA 6, 2008). Before 1980, "Medicare paid for all medical treatment within its scope and left private insurers merely to pick up whatever expenses remained." *Bio-Medical Applications of Tenn, Inc v Central States Southeast & Southwest Areas Health & Welfare Fund*, 656 F3d 277, 278 (CA 6, 2011). In 1980, "to curb the rising costs of Medicare, Congress enacted the Medicare Secondary Payer Act, which flipped the payment order, such that private insurers became the primary payers and Medicare became (as the Act's name indicates) the secondary payer." *MSPA Claims 1, LLC v Kingsway Amigo Ins Co*, 950 F3d 764, 767 (CA 11, 2020) (cleaned up).

To understand the dispute, it will be helpful to explore several provisions of 42 USC 1395y(b) of the MSPA:

- Paragraph (1), "Requirements of group health plans": Generally speaking, this provision prohibits group health plans from considering a covered individual's entitlement to certain Medicare benefits. This provision is not at issue here.

- Paragraph (2), "Medicare secondary payer": This provision sets forth the circumstances under which Medicare will be a secondary payer, i.e., the payer next in priority after a primary payer. In relevant part, the paragraph reads as follows:

(A) In general

Payment under this subchapter may not be made, except as provided in subparagraph (B), with respect to any item or service to the extent that—

(i) payment has been made, or can reasonably be expected to be made, with respect to the item or service as required under subparagraph (1), or

(ii) payment has been made or can reasonably be expected to be made under a worker's compensation law or plan . . . .

-4-

In this subsection, the term "primary plan" [includes] . . . a workmen's compensation law or plan. . . .

(B) Conditional payment

(i)    Authority to make conditional payment

The Secretary may make payment under this subchapter with respect to an item or service if a primary plan described in subparagraph (A)(ii) has not made or cannot reasonably be expected to make payment with respect to such item or service promptly (as determined in accordance with regulations). Any such payment by the Secretary shall be conditioned on reimbursement to the appropriate Trust Fund in accordance with the succeeding provisions of this subsection.

(ii)    Repayment required

Subject to paragraph (9), a primary plan . . . shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means. . . .

(iii)    Action by United States

In order to recover payment made under this subchapter for an item or service, the United States may being an action against any or all entities that are or were required or responsible . . . to make payment . . . .

- Paragraph (3), "Enforcement": This provision creates a private right of action for double damages against a primary plan. In relevant part, the provision reads:

(A) Private cause of action

There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for the primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

To summarize, as applicable here, when a workmen's compensation plan has made or is reasonably expected to make a payment for covered medical services, the MSPA prohibits Medicare from making a payment (subparagraph (2)(A)(ii)). This furthers the act's objective of making Medicare a *secondary* payer. The exception to this is when the workmen's compensation plan has not made or is not reasonably expected to make a timely payment; in that circumstance, Medicare can come in and make a conditional payment for the services (subparagraph (2)(B)(i)).

To recover its conditional payment, the federal government can bring an action against the workmen's compensation plan (subparagraph (2)(B)(iii)). Alternatively, a private entity, such as the medical provider, can bring a private cause of action against the plan when the plan fails to make payment "in accordance with paragraphs (1) and (2)(A)" (subparagraph (3)(A)). In doing so, the private entity can seek double damages (subparagraph (3)(A)).

## C. PRIVATE CAUSE OF ACTION AND DEMONSTRATION OF RESPONSIBILITY TO PAY

The dispute here centers on whether the "demonstrated . . . responsibility" provision of subparagraph (2)(B)(ii) applies to a private cause of action brought by a medical provider against a workmen's compensation insurer, when there exists a good-faith dispute about coverage. To put it another way: When there is a good-faith dispute about coverage, does there have to be some kind of demonstration (via judgment or other means) that a workmen's compensation plan actually covered the injured person before a medical provider can bring a viable cause of action against the plan for double damages under subparagraph (3)? If yes, then Bronson Healthcare was premature in suing Conifer and its lawsuit against the insurer should be dismissed without prejudice; if no, then Bronson Healthcare can proceed with its lawsuit.

Notably, neither party provides caselaw addressing MSPA actions in the workmen's compensation context, and we have found few such cases. Of these few cases, most were filed after the conclusion of workmen's compensation proceedings (i.e., there was a "demonstration" of responsibility to pay before the lawsuit was filed), and so have little relevance here. See, e.g., *Manning v Utilities Mut Ins Co, Inc*, 254 F3d 387, 390-391 (CA 2, 2001); *Estate of McDonald v Indemnity Ins Co of North America*, 107 F Supp 3d 764, 765-766 (WD Ky, 2014). In the one case in which the workmen's compensation proceedings had not concluded when the lawsuit was filed, the trial court found that it did not have jurisdiction to hear the case until the administrative body with exclusive jurisdiction over claims involving workmen's compensation made its determination. *Fisher v Clarendon Nat Ins Co*, unpublished opinion of the United States District Court for the Western District of Missouri, issued January 18, 2008 (Case No. 07-04092-CV-C-NKL), p 3.

Stepping back for a broader view, courts disagree about whether the demonstrated-responsibility provision is a condition precedent to a private right of action under the MSPA, *Glover v Ligget*, 459 F3d 1304, 1309 (CA 11, 2006), or is solely applicable to an action brought against a tortfeasor, *Bio-Medical*, 656 F3d at 292. The U.S. Supreme Court has not ruled on this question of federal law (which would bind all courts), nor has our Supreme Court ruled on it (which would bind lower Michigan courts). Although the U.S. Court of Appeals for the Sixth Circuit geographically covers Michigan (along with Ohio, Kentucky, and Tennessee), and that court has resolved the question in a published decision, see *Bio-Medical*, 656 F3d at 292, this Court is not

obligated to follow decisions of lower federal courts, *Dobronski v Transamerica Life Ins Co*, 347 Mich App 92, 102; 13 NW3d 895 (2023). "With that said, as with any nonbinding caselaw, we can consider the decisions of lower federal courts for their persuasive value, if any." *Id.* (cleaned up).

Bronson Healthcare asks this Court to follow the decision of the Sixth Circuit in *Bio-Medical* and conclude that the demonstrated-responsibility provision does not apply to this coverage dispute. In *Bio-Medical*, a patient had been diagnosed with end-stage renal disease and began receiving dialysis treatment from the plaintiff medical provider. The defendant in the case was the patient's health insurer. As soon as the patient became entitled to Medicare benefits, the defendant health insurer ceased coverage per an express condition in its plan: "Coverage under this Plan shall terminate on the earliest of the following dates: . . . (b) the date [the insured] first becomes entitled to Medicare benefits." *Bio-Medical*, 656 F3d at 280. This contract provision was in direct contradiction to the Medicare statute. *Id.* at 283 (citing 42 USC 1395y(b)(1)(C)(i)).

Medicare stepped in and made a conditional payment, but the payment was purportedly less than what the plaintiff medical provider would have received from the defendant health insurer. The plaintiff medical provider sued the defendant, asserting a private cause of action for double damages under the MSPA. The defendant health insurer argued, similar to Conifer in the instant case, that a health insurer's responsibility to pay must be "demonstrated" before a medical provider can bring a viable claim against that insurer under the MSPA, and that no such demonstration had occurred yet. *Id.* at 281, 287.

The *Bio-Medical* court rejected the defendant health insurer's position. The court began its statutory analysis by asking, "When does a primary plan fail to make payment 'in accordance with paragraphs (1) and (2)(A)'?" *Id.* at 285 (quoting 42 USC 1395y(b)(3)(A)). (Recall that this is the triggering event, the condition precedent, to bring a private cause of action in the first place.) "Determining when a primary plan violates paragraph (1) is easy," according to the *Bio-Medical* court, *id.*, though it was not relevant to the parties' dispute in that case (or the instant case).

Moving to subparagraph (2)(A), the *Bio-Medical* court read that provision to apply solely to Medicare, i.e., Medicare may make a conditional payment under certain circumstances. *Id.* at 285-286. The provision had little relevance to primary plans, according to the court. *Id.* at 286. Read in this way, the court concluded,

> [A] primary plan fails to pay "in accordance with paragraphs (1) and (2)(A)" when it terminates a planholder's coverage and thereby induces Medicare to make a conditional payment on its behalf—that is, when the primary plan violates the statutory system that these two paragraphs set into motion. Put differently, a primary plan is liable under the private cause of action when it discriminates against planholders on the basis of their Medicare eligibility and therefore causes Medicare to step in and (temporarily) foot the bill. [*Id.*]

Under this reading, there was no specific requirement that a primary plan's responsibility be "demonstrated" by some separate action or otherwise; it was sufficient alone to look at the "insurance contract (where insurers assume the responsibility of paying for enumerated contingencies ex ante)." *Id.* at 291.

One problem with this interpretation, however, is that subparagraph (2)(A) expressly restricts Medicare from making any payment "except as provided in subparagraph (2)(B)," the very subparagraph that provides for conditional payments by Medicare. And it is in subparagraph (2)(B) where Congress set forth the requirement of a primary plan to reimburse Medicare for a conditional payment, as long as it has been "demonstrated" that the primary plan "had a responsibility" for payment in the first place. 42 USC 1395y(b)(2)(B)(ii). It appears, in other words, that when Congress created the private cause of action in subparagraph (3), and explicitly conditioned that cause of action on when "a primary plan . . . fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)," 42 USC 1395y(b)(3), it also conditioned that cause of action on the requirements of subparagraph (2)(B), including the "demonstration" requirement of subparagraph (2)(B)(ii), 42 USC 1395y(b)(2)(B)(ii). On this reading, before the plaintiff in *Bio-Medical* could have brought a private cause of action for double damages against the defendant insurer, there would have had to have been some "demonstration" that the insurer was responsible for payment before the action could be brought against it.

The *Bio-Medical* court rejected this interpretation of the MSPA. In doing so, the court eschewed a plain reading of the text and relied instead on legislative history and its understanding of the purpose of the "demonstrated responsibility" provision. Specifically, the court noted that the "demonstrated responsibility" provision of subparagraph (2)(B)(ii) was added by Congress after a series of court cases held that the MSPA did not apply to tortfeasors, which in effect shielded certain wrongdoers (including tobacco companies) from Medicare reimbursement and private causes of action. *Id.* at 289-290. The court did recognize that "the text of that provision is addressed to all 'primary plans'—the Act's broadest category of private insurer," *id.* at 290, and this would presumably cover not only the tortfeasor added to the MSPA by the earlier amendment, but also, much more plainly, a group health plan (like the *Bio-Medical* defendant) or a workmen's compensation plan (like defendant here). But, based on the "context of [the provision's] inclusion"—i.e., the legislative history and policy—the court concluded "that Congress intended it only as a condition precedent to tortfeasor liability." *Id.*

The *Bio-Medical* court too readily swept past the actual text of the MSPA. The fundamental mistake that court made in reading the MSPA was to conclude that Congress drafted subparagraph (2)(A) with only Medicare in mind. It is true that subparagraph (2)(A) is directed to Medicare, but it is equally true that the subparagraph is also directed, implicitly *and* explicitly, to covered primary plans, including group health plans and workmen's compensation plans. First, implicitly, paragraph (2) sets forth the conditions under which Medicare is a "*secondary* payer," which necessarily means that there must be a *primary* payer. Paragraph (2) makes no semantic sense unless one understands that some entity—a group insurance plan, a self-insured plan, a tortfeasor—must be the primary payer.

Second, explicitly, subparagraph (2)(A) recognizes that a primary plan, like a group health plan or workmen's compensation plan, might well have already made, or "can reasonably be expected" to make, payment on behalf of an insured. 42 USC 1395y(b)(2)(A)(ii). In that case, Medicare is prohibited from making any payment to the medical provider "except as provided in subparagraph (B)." 42 USC 1395y(b)(2)(A). And what does subparagraph (B) provide? The authority for Medicare to make a conditional payment, 42 USC 1395y(b)(2)(B)(i), and the right to recoup such conditional payment from a primary plan only when "it is demonstrated that such primary plan has or had responsibility to make payment" in that circumstance, 42 USC 1395y(b)(2)(B)(ii).

Third, and again explicitly, this recognition in subparagraph (2) of a primary plan's duty to pay is further recognized and reinforced in paragraph (3), the private cause of action. In that provision, Congress again recognized that a primary plan is supposed "to provide for *primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A),*" and when it does not, the medical provider will have a private cause of action against that plan. 42 USC 1395y(b)(3) (emphasis added). Thus, Congress made it quite clear that subparagraph (2)(A) does, contrary to the *Bio-Medical* court's reading, relate to the duties of a primary plan, in that the primary plan has a duty to be the primary payer, with Medicare as the secondary one.

Thus, there is no ambiguity in the text when it comes to reading the private-cause-of-action provision of the MSPA in a case like the instant one. There is a private cause of action for double damages when a "primary plan" (like a workmen's compensation plan) does not make a primary payment or make a reimbursement "in accordance with paragraphs (1) and (2)(A)." Paragraph (1) is not applicable here; to pay "in accordance with" subparagraph (2)(A) means to pay or reasonably be expected to pay in accordance with the plan's terms and conditions and applicable law, subject to the provisions of subparagraph (2)(B). And subparagraph (2)(B) provides that Medicare can make a conditional payment and, *if it is shown* that a primary plan is responsible for payment, then that primary plan must reimburse Medicare. Unless and until there is a "demonstration" of the primary plan's responsibility to pay, the condition precedent of failing to pay "in accordance with" subparagraph (2)(A) has not been met.

Our reading is consistent with other federal case law interpreting the MSPA's private cause of action, both in the tort context and, like here, the insurance-coverage context. In the context of a tort action, the United States Court of Appeals for the Eleventh Circuit concluded "that an alleged tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated *before* an [MSPA] private cause of action for failure to reimburse Medicare can correctly be brought under section 1395y(b)(3)(A)." *Glover*, 459 F3d at 1309. The *Glover* court's analysis focused on the text of the MSPA, reasoning as follows:

> We begin our analysis by closely examining the text of section 1395y(b)(3), which creates a private cause of action for double damages "in the case of a primary plan which *fails* to provide for primary payment (or appropriate reimbursement) in accordance with . . . (2)(A)." Paragraph (2)(A) prohibits Medicare from paying for items or services for which payment can reasonably be expected to be made under a primary plan "except as provided in subparagraph (B)." Subparagraph (B) authorizes Medicare to make conditional payments, but requires that "[a] primary plan, and any entity that receives payment from a primary plan, *shall reimburse* [Medicare] with respect to an item or service *if it is demonstrated* that such primary plan *has or had a responsibility* to make payment with respect to such item or service." 42 USC 1395y(b)(2)(A) & (b)(2)(B)(ii) (emphasis added). [*Id*. at 1308-1309 (alterations in original).]

Accordingly, the *Glover* court concluded that demonstrating responsibility is a condition precedent to a defendant's obligation to reimburse Medicare and a private cause of action. *Id*. at 1309. Until "responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment), [the] obligation to reimburse Medicare does not exist," and therefore, it cannot be said that a defendant has failed to reimburse Medicare. *Id*.

In the insurance-coverage context, the United States Court of Appeals for the Ninth Circuit has similarly interpreted the MSPA's private cause of action. In *DaVita Inc v Virginia Mason*

*Memorial Hosp*, 981 F3d 679 (CA 9, 2020), the court considered whether Medicare conditional payment was a prerequisite to a provider bringing a private action. In answering this question, the court had to consider a penultimate question, the same one addressed here and in *Bio-Medical*, namely, does subparagraph (2)(A) apply solely to Medicare or to both Medicare and primary plans? The *DaVita* court pointedly rejected the *Bio-Medical* court's reading: "[S]ubparagraph (2)(A) assigns secondary-payer status to Medicare and therefore necessarily assigns primary-payer status to the *private insurer*. . . . [T]he functional effect of subparagraph (2)(A) on a private insurer is to require the private insurer to be the primary payer." *Id.* at 688; see also *id.* at 689-691. The court then considered what its plain reading of the text would mean in the context of a private cause of action involving a coverage dispute:

> Specifically, our reading does not convert ordinary billing disputes into [MSPA] claims giving rise to double damages. If a plan denies payment for any reason *other* than those reasons forbidden by paragraphs (1) and (2)(A), then no [MSPA] claim is available. For example, no [MSPA] claim would be available if the insurer declines to pay because of a good faith assertion[4] that the beneficiary has reached the plan's maximum payments, that the claim is fraudulent, that the beneficiary failed to obtain preapproval for a service, that the beneficiary's coverage had expired, and so on. Those disputes would require resolution through ordinary ERISA channels or state-law contract claims. An [MSPA] claim, and its allowance of double damages, would be available only if the plan declined to pay for a reason forbidden by either paragraph (1) or (2)(A).
>
> * * *
>
> [4] A bad-faith assertion might require a different result. If a plan raised a bad-faith defense to mask its violation of the [MSPA] provisions, an [MSPA] action might be valid. Of course, the plaintiff would have the burden to show that the real reason for the denial was one of the [MSPA]-forbidden grounds. [*Id.* at 692 (citation omitted).]

This reading of the private-cause-of-action provision in the MSPA accords with our own.

Although the MSPA has been described as "convoluted and torturous," *Michigan Spine & Brain Surgeons, PLLC v Esurance Prop & Casualty Ins Co*, 758 F3d 787, 791 (CA 6, 2014) (cleaned up), the demonstrated-responsibility provision is relatively clear and unambiguous, as explained in *Glover*, 459 F3d at 1309. The private cause of action arises "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with . . . (2)(A)." 42 USC 1395y(b)(3). Subparagraph (2)(A) prohibits Medicare from paying for services that a primary plan is obligated to pay "except as provided in subparagraph (B)." And subparagraph (B) allows Medicare to make conditional payments and expressly states that reimbursement to Medicare is required "if it is *demonstrated* that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 USC 1395y(b)(2)(B)(ii) (emphasis added). Thus, we agree with the *Glover* court that the demonstrated-responsibility provision is a condition precedent to an action under the MSPA.

Likewise, we similarly agree with the *DaVita* court that an ordinary, good-faith billing dispute does not give rise to a private cause of action for double damages under the MSPA. When

there is no question that a primary plan covers a particular person, service, or item, then the demonstration of subparagraph (2)(B) is accomplished by reference to the plan documents and the law. See, e.g., *MSP Recovery, LLC v Allstate Ins Co*, 835 F3d 1351, 1361 (CA 11, 2016) (holding that "a contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under" the MSPA); 42 CFR 411.22(b)(3) (noting that responsibility for payment can be demonstrated by a "contractual obligation"). But when there is a good-faith question about coverage, something more is needed to demonstrate that a primary plan is responsible to pay, such as a "judgment," a "waiver", or some "other means." 42 USC 1395y(b)(2)(B)(ii). Based on the record before this Court, there is no genuine issue of material fact that Conifer had a good-faith basis for disputing coverage; thus, something more than mere reference to the plan documents and law was needed to demonstrate that Conifer was, in fact, responsible for payments related to Roach's care.

Beyond a plain reading of the statute, we further recognize that a contrary holding would have several distorting effects in cases like this one. To hold otherwise would, for example, prohibit a workmen's compensation insurer like Conifer from ever contesting liability without risking the penalty of double damages. Further, to allow an MSPA action before conclusion of the workmen's compensation proceedings presents procedural problems that have been highlighted by this litigation, such as the trial court being presented with a factual issue that is in the province of the administrative tribunal and the possibility of an insurer being ordered, in effect, to pay treble damages. In this case, the trial court grappled with both of these issues, noting the possibility of inconsistent judgments and the apparent unfairness of treble damages.

To be clear, neither the plain text of the MSPA nor our holding today should be read to give carte blanche to a workmen's compensation insurer or other primary payer to deny payment when the law or the plan's own terms and conditions plainly provide coverage. As the *DaVita* court recognized, and we reiterate today, a denial of coverage made in bad faith will not shield a primary payer from a double-damages lawsuit under the MSPA.

Although an initial decision in the workmen's compensation proceedings has now arguably demonstrated Conifer's responsibility for Roach's medical care, Bronson Healthcare has not demonstrated that Conifer failed to reimburse Medicare within the meaning of the MSPA, and the trial court erred by granting summary disposition in favor of the medical provider. Because Bronson Healthcare filed this litigation prematurely, Conifer had no real opportunity to reimburse Medicare. At the very least, Conifer should be given that opportunity, as other workmen's compensation insurers have been. See *Manning*, 254 F3d at 390-391; *Estate of McDonald*, 107 F Supp 3d at 765-766.

## D. REMAINING ISSUES

Conifer also argues on appeal that the trial court erred by granting summary disposition on the basis of collateral estoppel when the workmen's compensation decision had been appealed and when the magistrate's decision did not resolve the issue of statutory damages under the MSPA. In the trial court, Conifer did not address the issue of collateral estoppel in its briefing. In fact, at the hearing, Conifer conceded to the authority cited by Bronson Healthcare and arguably waived the collateral-estoppel issue. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). Regardless, as discussed earlier, this MSPA action

was filed prematurely. Further, Conifer correctly points out that the workmen's compensation decision did not resolve the issue of statutory damages under the MSPA.

Our conclusion that the trial court erred by granting summary disposition and that the case should be dismissed renders the other issues presented in these consolidated appeals not ripe for review. See *People v Warner*, 514 Mich 41, 62-63; 22 NW3d 1 (2024). The issues raised in Bronson Healthcare's appeal with regard to prejudgment interest and the offsetting of damages have arisen precisely because the medical provider prematurely brought a claim under the MSPA and the insurer had no opportunity to reimburse Medicare when its responsibility to do so was established.

III. CONCLUSION

The trial court erred by granting summary disposition in favor of Bronson Healthcare. We vacate the trial court's order and remand with instructions to the trial court to dismiss this matter without prejudice. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Christopher P. Yates