[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14353
_____

D.C. Docket No. 1:15-cv-21532-JLK

MSP RECOVERY, LLC,

Plaintiff - Appellant,

versus

ALLSTATE INSURANCE COMPANY,

Defendant - Appellee.

_____

No. 15-12398
_____

D.C. Docket No.  1:15-cv-20213-UU

MSP RECOVERY, LLC,

Plaintiff - Appellant,

versus

PROGRESSIVE SELECT INSURANCE COMPANY,

Defendant - Appellee.

_____

No. 15-12402
_____

D.C. Docket No.  1:15-cv-20208-UU


MSP RECOVERY, LLC,

Plaintiff - Appellant,

versus

PROGRESSIVE SELECT INSURANCE COMPANY,

Defendant - Appellee.


_____

No. 15-12403
_____

D.C. Docket No.  1:15-cv-20616-FAM


MSP RECOVERY, LLC,

Plaintiff - Appellant,

versus

PROGRESSIVE SELECT INSURANCE COMPANY,

Defendant - Appellee.

2

_____

No. 15-14355
_____

D.C. Docket No.  1:15-cv-21687-JLK

MSPA CLAIMS 1, LLC,

Plaintiff - Appellant,

versus

IDS PROPERTY CASUALTY INSURANCE COMPANY,

Defendant - Appellee.

_____

No. 15-14356
_____

D.C. Docket No.  1:15-cv-21504-JLK

MSPA CLAIMS 1, LLC,

Plaintiff - Appellant,

versus

INFINITY AUTO INSURANCE COMPANY,

Defendant - Appellee.

3

_____

No. 15-14790
_____

D.C. Docket No.  1:15-cv-20732-RNS

MSP RECOVERY, LLC,

                                    Plaintiff - Appellant,

versus

ALLSTATE INSURANCE COMPANY,

                                    Defendant - Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(August 30, 2016)

Before ED CARNES, Chief Judge, ANDERSON, Circuit Judge, and TITUS,* District Judge.

ANDERSON, Circuit Judge:

These seven consolidated[1] cases present the question of whether a

contractual obligation, without more (specifically, without a judgment or

_____

\* Honorable Roger W. Titus, United States District Judge for the District of Maryland, sitting by designation.

4

settlement agreement from a separate proceeding), can satisfy the "demonstrated

responsibility" requirement of the private cause of action provided for by the

Medicare Secondary Payer Act (the "MSP Act"). 42 U.S.C. §§ 1395y(b)(2)(B)(ii),

(b)(3)(A). We hold that it can.

## I. BACKGROUND

In 1980, Congress passed the MSP Act to reduce the costs of Medicare.

Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1306 (11th Cir. 2006). Prior to the

Act's passage, Medicare often acted as a primary insurer; that is, Medicare paid for

enrollees' medical expenses, even when an enrollee carried other insurance that

covered the same costs, or when a third party had an obligation to pay for them.

The MSP Act, as its name suggests, changed that relationship so that Medicare acts

as a secondary payer. "This means that if payment for covered services has been or

---

[1] The following appeals were previously consolidated and set for oral argument before this panel on June 9, 2016: Nos. 15-14353, 15-14355, 15-14356 and 15-14790. Similarly, the following appeals were previously consolidated and set for oral argument in a different slot also before this panel on June 9, 2016: Nos. 15-12398, 15-12402 and 15-12403. We sua sponte consolidate all of the appeals, and we dispose of all of them in this single opinion. Oral argument in all of these appeals was continued in two orders of this Court dated June 2, 2016. We unanimously determine that these appeals will be decided on the briefs without oral argument. See 11th Cir. R. 34-3(f).

is reasonably expected to be made by someone else, Medicare does not have to pay." Cochran v. U.S. Health Care Fin. Admin., 291 F.3d 775, 777 (11th Cir. 2002). The MSP Act prohibits Medicare from paying for items or services if "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii). If, however, a primary payer—in the parlance of the statute, a "primary plan"—"has not made or cannot reasonably be expected to make payment with respect to the item or service promptly," Medicare may make a payment on the enrollee's behalf, conditioned on reimbursement from the primary plan. Id. § 1395y(b)(2)(B)(i); see also Cochran, 291 F.3d at 777 ("In order to accommodate its beneficiaries, however, Medicare does make conditional payments for covered services, even when another source may be obligated to pay, if that other source is not expected to pay promptly.").

We pause here to note that, though the MSP Act uses the term "primary plan" to describe entities with a primary responsibility to pay, that term covers more than just health insurance plans. The law defines a "primary plan" as "a group health plan or large group health plan, . . . a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured

6

plan) or no fault insurance . . . ." 42 U.S.C. § 1395y(b)(2)(A).[2] Thus, it is clear that the defendants in this case—which are all personal injury protection no-fault carriers—are primary plans within the meaning of the MSP Act.

The mechanics of the reimbursement process are set out in the statute as follows. The law requires a primary plan to reimburse Medicare "if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(B)(ii). The statute proceeds to explain how that responsibility may be demonstrated:

> responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means.

Id. This is the demonstrated responsibility requirement; in other words, Medicare may obtain reimbursement from a primary plan if it demonstrates that the primary plan "has or had a responsibility" to pay for the item or service. To facilitate recovery of these payments, the law provides for a right of action by the United States, for double damages, against "any or all entities that are or were required or responsible" to make payment under a primary plan. Id. § 1395y(b)(2)(B)(iii).

---

[2] In 2003, Congress expanded the definition of the term "primary plan" further, to specify that "[a]n entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk." 42 U.S.C. § 1395y(b)(2)(A).

In addition to the right of action by the United States, Congress created a private cause of action against a primary plan that fails to provide for primary payment. Id. § 1395y(b)(3)(A). Like the cause of action provided to the United States, the private cause of action also permits the plaintiff to recover double damages. Id.[3]

B. Factual and Procedural History

The seven consolidated cases in this appeal all involve attempts by assignees of a health maintenance organization ("HMO") to recover conditional payments via the MSP Act's private cause of action. The facts relevant to the issues raised on appeal are similar in each case. Plaintiffs MSP Recovery LLC ("MSP Recovery") and MSPA Claims 1, LLC ("MSPA Claims 1") are firms that obtain claims for reimbursement under the MSP Act from HMOs that offer Medicare Advantage Plans. Defendants are all insurance companies that provide personal injury protection ("PIP") no-fault insurance to automobile owners and operators in Florida. In each case, a person covered by a defendant's PIP no-fault insurance policy was injured in an automobile accident. Each such insured was also enrolled

---

[3] However, it is important to note that the private right of action created by subsection (b)(3)(A) does not provide for a qui tam action, whereby a private person might bring a lawsuit on behalf of the government. Rather, the MSP Act's private cause of action "merely enables a private party to bring an action to recover from a private insurer only where that private party has itself suffered an injury because a primary plan has failed to make a required payment to or on behalf of it." Woods v. Empire Health Choice, Inc., 574 F.3d 92, 101 (2d Cir. 2009).

in a Medicare Advantage Plan provided by Florida Healthcare Plus ("FHCP"), an HMO. FHCP made conditional payments on behalf of the injured persons to cover medical expenses in each accident. FHCP assigned its claims under the MSP Act, and Plaintiffs are the current assignees. Plaintiffs allege that, under the MSP Act, FHCP was a secondary payer, and Defendants were primary plans with obligations to pay some of their insureds' medical costs. Defendants' responsibility to pay, Plaintiffs assert in their complaints, is demonstrated by the insurance contracts the injured persons entered into with Defendants. Plaintiffs filed suit in the Southern District of Florida seeking double damages under 42 U.S.C. § 1395y(b)(3)(A).

All of the consolidated cases were dismissed. In each case, the district court relied on our opinion in Glover v. Liggett Group, Inc. In a case in which the defendant was an alleged tortfeasor, Glover held that a primary plan's responsibility to pay must be demonstrated before the plaintiff files a claim under the MSP Act. 459 F.3d at 1309. When the primary plan's responsibility to pay arises from tort liability, we held in Glover, liability might be demonstrated by a judgment or settlement, but the tortfeasor's liability cannot be "demonstrated" through the MSP Act claim itself. Id. In other words, a federal lawsuit under the MSP Act cannot serve as a substitute for determining liability via a standard tort claim; the tortfeasor's responsibility to pay must be independently established. The

9

courts below held that the requirement we established in Glover—that a primary plan's responsibility to pay be demonstrated through a judgment or agreement separate from the MSP claim—applies even when the primary plan's alleged responsibility to pay is contractual, as it is in these cases, rather than the result of tort liability. The primary plan's alleged responsibility to pay in these cases is contractual because responsibility to pay is determined by construction of the PIP no-fault insurance policies issued by Defendants to each insured, whose medical expenses were conditionally paid by Plaintiffs' Medicare Advantage Organization predecessors. Accordingly, because Plaintiffs did not obtain a judgment on the insurance contracts prior to bringing their MSP Act claims, the district courts dismissed Plaintiffs' suits for failure to state a claim. Plaintiffs urge us to hold that Glover applies only when the responsibility to pay arises from tort, and that alleging the existence of a contractual obligation to pay suffices to demonstrate a primary payer's responsibility under the MSP Act private cause of action.

## II. STANDARD OF REVIEW

We review a district court's decision granting a motion to dismiss de novo. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). "To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face, meaning it must contain factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."

Bishop v. Ross Earle & Bonan, P.A., 817 F.3d 1268, 1270 (11th Cir. 2016)

(internal quotation marks omitted).

## III. DISCUSSION

### A. Standing

Before proceeding to the merits of this appeal, we address whether Plaintiffs have standing to bring this suit. The Constitution confines federal courts' jurisdiction to "cases" and "controversies." U.S. Const. Art. III, § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). Federal courts have an independent obligation to ensure that subject-matter jurisdiction exists to hear a case, and dismissal is warranted if a court determines that it lacks jurisdiction. In re Trusted Net Media Holdings, LLC, 550 F.3d 1035, 1042 (11th Cir. 2008). "[T]he irreducible constitutional minimum of standing contains three elements." Lujan, 504 U.S. at 560, 112 S. Ct. at 2136. A plaintiff who invokes the jurisdiction of a federal court bears the burden to show "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will

11

be redressed by a favorable decision." <u>Granite State Outdoor Adver., Inc. v. City of Clearwater</u>, 351 F.3d 1112, 1116 (11th Cir. 2003). The standing issue in the instant case concerns the first element: injury in fact.

Defendant IDS Property Casualty Insurance Company ("IDS") argues that Plaintiff MSPA Claims 1 lacks standing to bring suit because it has suffered no legally cognizable injury. IDS points out that any cause of action in the seven consolidated cases originally belonged to FHCP. MSPA Claims 1 is the assignee of FHCP's claims against IDS. IDS argues that the assignments were invalid and that MSPA Claims 1 therefore suffered no legally cognizable injury. Though IDS was the only defendant to raise the issue, its argument applies equally in all of these cases, because similar purported assignments occurred in each case. If IDS is correct that the assignments of the claims to Plaintiffs were invalid, then we must dismiss each of these cases for lack of jurisdiction.

MSPA Claims 1's complaint alleges that the causes of action it asserts initially belonged to FHCP, and that MSPA Claims 1 obtained the claims through a series of assignments.[4] IDS's argument that these assignments were invalid relies on the fact that Medicare Advantage Organizations like FHCP must enter into a

---

[4] Defendants also argue that the private cause of action provided by the MSP Act does not extend to Medicare Advantage Organizations such as FHCP. Defendants' argument is foreclosed by our recent decision in <u>Humana Medical Plan, Inc. v. Western Heritage Insurance Co.</u>, __ F.3d __, No. 15-11436, 2016 WL 4169120, at *6 (11th Cir. Aug. 8, 2016).

contract with the federal government to offer Medicare Advantage Plans. IDS points out that federal law generally prohibits assignment of contracts between the federal government and third parties. Therefore, IDS argues, assignment of the claim was barred by a federal statute. The anti-assignment statute reads:

> The party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to another party. A purported transfer in violation of this subsection annuls the contract or order so far as the Federal Government is concerned, except that all rights of action for breach of contract are reserved to the Federal Government.

41 U.S.C. § 6305(a).

The assumption underlying IDS's argument appears to be that a Medicare Advantage Organization's standing to bring a claim under the MSP Act is derivative of its contractual relationship with Medicare. It is unclear why IDS believes that to be the case. Plaintiffs' MSP Act claims are not claims on FHCP's contract with the government, and there is no allegation that anyone has breached such a contract. The MSP Act's private cause of action does not require any sort of relationship (contractual or otherwise) with the government (or anyone else) as a prerequisite to suit. FHCP's contract with Medicare simply permits it to provide insurance plans that offer Medicare benefits. The contract does not provide for any special right of recovery under the private cause of action of the MSP Act. There is no allegation that FHCP transferred that contract, or any interest in the contract, to

13

MSPA Claims 1. MSPA Claims 1 did not undertake to do anything that FHCP is obligated to do under its contract with the government, nor did MSPA Claims 1 obtain any rights against the federal government. Rather, FHCP assigned to Plaintiffs here a claim created by statute, one that is entirely separate from its contract with Medicare. Because FHCP did not assign its contract with the government, or any interest therein, the assignment is not prohibited by § 6305, and IDS's standing argument must fail.

B. Demonstrated Responsibility

The primary issue in these consolidated cases is the operation of the demonstrated responsibility provision of the MSP Act. The text of the MSP Act, however, is remarkably abstruse. Therefore, we begin our discussion of the merits with a comprehensive review of the structure of the private cause of action before analyzing the application of that particular provision.

1. Structure of the MSP Act Private Cause of Action

The text of the private cause of action provided for by the MSP Act is challenging to parse. It reads:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A).

14

42 U.S.C. § 1395y(b)(3)(A). One difficulty in understanding the text stems from the fact that a primary plan is only liable when it fails to pay "in accordance with" paragraphs (1) and (2)(A). The ambiguity arises because the demonstrated responsibility requirement at the heart of this case is contained in neither of the paragraphs referenced in the private cause of action provision. That is, the demonstrated responsibility requirement is not contained in either paragraph (1) or in paragraph (2)(A). Rather, the demonstrated responsibility requirement is contained in paragraph (2)(B). However, this lack of clarity in the statute need not detain us in this case. Our Glover decision has already held that the demonstrated responsibility requirement is incorporated as a prerequisite to pursuit of the private cause of action. See Glover, 459 F.3d at 1308–09 (holding that a plaintiff pursuing the private cause of action must satisfy the demonstrated responsibility requirement). The Glover court explained that the demonstrated responsibility requirement was incorporated as a prerequisite because the private cause of action language references paragraph (2)(A), which in turn references paragraph (2)(B). See also Humana, __ F.3d __, 2016 WL 4169120, at *6 ("Although paragraph (2)(A) does not expressly obligate primary plans to make payments, the defined term 'primary plan' presupposes an existing obligation (whether by statute or contract) to pay for covered items or services. Therefore, a primary plan 'fails to

15

provide for primary payment (or appropriate reimbursement) in accordance with paragraph[] . . . (2)(A),' when it fails to honor the underlying statutory or contractual obligation.") (internal citation omitted).

We turn, then, to answer the question: Have Plaintiffs adequately demonstrated Defendants' responsibility for payment by alleging an obligation pursuant to the insurance contracts, or must Plaintiffs first obtain a judgment against Defendants by suing for enforcement of those contracts prior to bringing suit under the MSP Act?

2. Application of the Demonstrated Responsibility Provision

The MSP Act permits demonstration of a primary plan's responsibility to pay "by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." 42 U.S.C. § 1395y(b)(2)(B)(ii). The question before us is whether the phrase "by other means" permits demonstration of responsibility by a contractual obligation. Defendants argue that it does not; they urge us to hold that Glover's demand for a "separate adjudication or agreement" applies when the defendant's responsibility derives from contract as well as from tort. Plaintiffs argue that a contractual obligation is among the "other means" by

16

which the statute permits demonstration of responsibility, and that no separate

adjudication or agreement (in addition to the contract) is necessary.

This issue has been addressed in regulations issued by the Centers for

Medicare and Medicaid Services ("CMS") interpreting the MSP Act. The

implementing regulations specify that a primary payer must reimburse Medicare

"for any payment if it is demonstrated that the primary payer has or had a

responsibility to make payment." 42 C.F.R. § 411.22(a). The regulations explicitly

list the means by which responsibility for payment may be demonstrated, including

a judgment or "other means, including but not limited to a settlement, award, or

contractual obligation." Id. § 411.22(b).[5] The regulations thus specifically permit

demonstration of responsibility by means of a contractual obligation.

"Generally, considerable weight should be accorded to an executive

department's construction of a statutory scheme it is entrusted to administer . . . ."

---

[5] That subsection of the regulations reads, in its entirety:

> (b) A primary payer's responsibility for payment may be demonstrated by—
>    (1) A judgment;
>    (2) A payment conditioned upon the beneficiary's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary payer or the primary payer's insured; or
>    (3) By other means, including but not limited to a settlement, award, or contractual obligation.

42 C.F.R. § 411.22(b).

17

Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 844, 104 S. Ct. 2778, 2782, 81 L. Ed. 2d 694 (1984). If a statute is silent or ambiguous with respect to a certain issue, we proceed to ask whether the executive's construction of the statute is permissible. Gulfcoast Med. Supply, Inc. v. Sec'y, Dep't of Health & Human Servs., 468 F.3d 1347, 1351 (11th Cir. 2006) (citing Chevron, 467 U.S. at 842–44, 104 S. Ct. at 2781–82). Here, the statutory phrase "other means" is ambiguous: it is not apparent from the text of the statute alone which "other means" Congress intended to allow. And a contractual obligation seems to us to be an eminently reasonable method of demonstrating responsibility.

Defendants do not claim that the interpretation of the statute provided in the regulations is unreasonable. Instead, they fall back on their primary argument: that the existence of a contract does not necessarily demonstrate responsibility. They point out that PIP insurance contracts do not promise payment or reimbursement for all medical expenses, and they argue that it is possible that Plaintiffs seek to recover for injuries not covered under their policies. In other words, Defendants argue that a contract can demonstrate responsibility, but only once it is reduced to a judgment or settlement.

We disagree, and our disagreement underscores an important difference between tort liability and contractual obligations. It is a fundamental principle of

18

contract law that a contract imposes enforceable rights and obligations: "The heart of 'contract' is thus found both in its promissory nature and in its enforceability. . . . [O]nce a contract is entered, the parties' rights and obligations are binding under the law . . . ." 1 Williston on Contracts § 1:1 (4th ed.). A contract imposes obligations on the parties immediately, without any involvement of the courts. While a lawsuit may be necessary to enforce a contract in the event of a breach, the obligations created by the contract exist as soon as it is executed. By contrast, an alleged tortfeasor has no obligations until he is adjudged liable. In a similar vein, demonstrating responsibility by means of a "judgment" necessarily presupposes a separate proceeding in which that judgment was obtained. On the other hand, the term "contractual obligation" in the CMS regulations presupposes only the existence of a contract.

Moreover, adopting Defendants' interpretation would render meaningless the statutory phrase "by other means," as well as the specific reference to contractual obligations in the regulation. Defendants' reading of the law "is thus at odds with one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." Corley v. United States, 556 U.S. 303, 314, 129 S. Ct. 1558, 1566, 173 L. Ed. 2d 443 (2009) (internal quotation

19

marks and brackets omitted). If Defendants are correct that a judgment or settlement agreement is always a prerequisite to suit under the MSP Act, then there are no "other means" that may demonstrate responsibility, and that part of the statute is superfluous. Additionally, Defendants' preferred interpretation renders the reference in the regulations to contractual obligations entirely inoperative. If Defendants are correct that a contract must always be reduced to a judgment, then a "contractual obligation" can never demonstrate responsibility; only a judgment can. The regulations envision demonstrating responsibility with a judgment or settlement from a separate proceeding. If a contractual obligation, absent such a judgment or settlement, cannot demonstrate responsibility to pay, then the reference to judgments and settlements would be sufficient. There is no purpose at all for listing a contractual obligation as a means of demonstrating responsibility. Requiring that such a contractual obligation be reduced to a judgment renders superfluous the phrase "by other means."

This line of reasoning is entirely consistent with Glover. In Glover, we concluded that responsibility must be demonstrated by "a separate adjudication or agreement." 459 F.3d at 1309. An insurance contract is, of course, a separate agreement, and permitting demonstration of responsibility via a contractual obligation is therefore consistent with our holding in Glover. Glover was decided

20

in the tort context, and the "agreement" the Glover panel likely had in mind was a settlement agreement. But a settlement agreement is just a type of contract. So if Defendants are correct that a contractual obligation alone cannot demonstrate responsibility, then, presumably, even the beneficiary of a settlement agreement has not demonstrated responsibility until he has sued for breach of the settlement agreement, prevailed, and obtained a judgment. Given the explicit references in the text of the law to settlements and waivers as means of demonstrating responsibility, Congress clearly did not intend the result Defendants request. The plain language of the MSP Act indicates that at least some contractual obligations—namely, settlement agreements—are sufficient to demonstrate responsibility. We see no reason that other types of agreements—such as insurance contracts—should be treated differently.

We hold that a contractual obligation may serve as sufficient demonstration of responsibility for payment to satisfy the condition precedent to suit under the MSP Act. This does not relieve Plaintiffs of their burden to allege in their complaints, and then subsequently prove with evidence, that Defendants' valid insurance contracts actually render Defendants responsible for primary payment of the expenses Plaintiffs seek to recover. And Defendants may still assert any valid contract defense in arguing against their liability. We hold only that a contractual

21

obligation may satisfy the demonstrated responsibility requirement, not that the existence of a contractual obligation conclusively demonstrates liability under the MSP Act's private cause of action.

### 3. Policy Maximums

Defendants IDS and Infinity Auto Insurance Company ("Infinity") argue in the alternative that, even if Plaintiffs' insurance contracts are sufficient to demonstrate Defendants' responsibility to pay, Plaintiffs' claims still fail because their complaints show that Defendants no longer have a responsibility to pay. Defendants' argument is grounded in the fact that Plaintiffs' insurance policies provided for a maximum of $10,000 in benefits. Defendants claim that any responsibility they had to pay was exhausted once the policy maximums were reached, which may have occurred in some of these cases. Plaintiffs respond that the statute requires repayment whenever a primary plan "has or had a responsibility to make payment," 42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added), and that Defendants are therefore liable if they ever had a responsibility to make a payment, even if they subsequently paid out the maximum benefits available under the policies.[6]

---

[6] In their brief, Plaintiffs do concede that they cannot recover more than twice the policy limits.

22

The district courts to which these arguments were presented did not reach them, instead dismissing the cases solely on the grounds that Glover barred liability. On remand, we leave it to the district courts to decide this issue in the first instance.[7]

## C. Remand of State Law Claims

In one of the consolidated cases, MSP Recovery, LLC v. Allstate Insurance Company, No. 15-14790, the district court remanded Plaintiff MSP Recovery's supplemental state law claims after dismissing the MSP Act claim, which was the only federal claim in the case. MSP Recovery asks that, if we vacate the dismissal of its MSP Act claim, we reinstate its state law claims. Defendant Allstate Insurance Company agrees that that is the proper course of action.

An order remanding a case for lack of subject-matter jurisdiction is not reviewable on appeal. 28 U.S.C. § 1447(d). However, when a district court remands state law claims after declining to exercise supplemental jurisdiction, the remand order is not based on a lack of subject-matter jurisdiction. Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 641, 129 S. Ct. 1862, 1867, 173 L. Ed. 2d 843 (2009). Thus, the remand order in this case is appealable. Additionally, where there is a basis for federal jurisdiction, the district court must exercise its supplemental

---

[7] IDS has also moved for sanctions on the grounds that some of these appeals are frivolous because IDS has paid out the policy maximums. IDS's motion is denied.

23

jurisdiction over related state law claims unless a statutory exception applies. See Palmer v. Hosp. Auth. of Randolph Cty., 22 F.3d 1559, 1569 (11th Cir. 1994). Accordingly, once Plaintiff's MSP Act claim is reinstated, the district court is required to exercise its supplemental jurisdiction over the related state law claims. Because the dismissal of the MSP Act claim—a claim over which the district court had federal question jurisdiction—was in error, remand of the supplemental state law claims was also in error. We therefore vacate the district court's remand order as well as the order of dismissal.

For the same reasons, we vacate the implicit discretionary dismissals of the state law claims in three of the other consolidated cases: MSP Recovery v. Allstate Insurance Company, No. 15-14353; MSPA Claims 1, LLC v. IDS Property Casualty Insurance, No. 15-14355; and MSPA Claims 1, LLC v. Infinity Auto Insurance Company, No. 15-14356. See Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) ("Because we reinstate Snow's federal claims, we must vacate the discretionary dismissal of the state-law claims, but we express no opinion on the merits of those claims.").

## III. CONCLUSION

For the reasons discussed above, we hold that a plaintiff suing a primary plan under the private cause of action in the MSP Act may satisfy the demonstrated

24

responsibility prerequisite by alleging the existence of a contractual obligation to pay. A judgment or settlement from a separate proceeding is not necessary. The judgments of the district courts in these cases are vacated, and the cases are remanded for further proceedings not inconsistent with this opinion.

VACATED and REMANDED.