[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12439

_____

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

                                        Plaintiff-Appellant,

versus

UNITED AUTOMOBILE INSURANCE COMPANY,
a Florida profit corporation,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:20-cv-20887-CMA

_____

2                    Opinion of the Court                    21-12439

———————————————

No. 21-12428

———————————————

MSPA CLAIMS 1, LLC,

Plaintiff-Appellant,

*versus*

COVINGTON SPECIALTY INSURANCE COMPANY,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Southern District of Florida

D.C. Docket No. 1:19-cv-21583-KMW

———————————————

Before WILLIAM PRYOR, Chief Judge, and ROSENBAUM and MARCUS,
Circuit Judges.

WILLIAM PRYOR, Chief Judge:

When a private insurer is liable for a Medicare beneficiary's medical expenses, Medicare or the Medicare Advantage Organization has secondary responsibility for the payment. *See* 42 U.S.C. § 1395y(b)(2)(A). If Medicare or the Medicare Advantage Organization pays these expenses up front, it must seek reimbursement from the insurance company that has primary responsibility for the payment. *See id.* § 1395y(b)(2)(B)(i); *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1316–17 (11th Cir. 2019). In these consolidated actions, assignees of two Medicare Advantage Organizations seek reimbursements from insurance companies that they allege qualify as primary payers of beneficiaries' medical expenses. The insurance companies argue, and the district courts agreed, that the assignees' claims are barred because both assignees failed to satisfy a procedural requirement: a contractual claims-filing deadline in one case and a statutory requirement of a pre-suit demand in the other. The assignees contend that the procedural requirements are preempted by the Medicare Secondary Payer Act. *See generally* 42 U.S.C. § 1395y(b). Because neither procedural requirement is preempted, we affirm.

## I. BACKGROUND

These consolidated appeals involve separate complaints filed by assignees of Medicare Advantage Organizations against private insurers. The first was filed against Covington Specialty Insurance Company, and the second was filed against United Automobile Insurance Company.

MSPA Claims 1, LLC, is the assignee of Florida Healthcare Plus, Inc., a Medicare Advantage Organization. It seeks to recover from Covington for the medical expenses of Medicare beneficiaries who were insured by Florida Healthcare Plus. MSPA pleaded an exemplar claim to "[d]emonstrate[] [its] [r]ight to [r]ecover" from Covington in a putative class action.

The exemplar claim involves a Medicare beneficiary identified as "P.M." In February 2014, P.M. fell while descending stairs at a property owned by 3550 Palm Beach Holdings, LLC, and injured her ankle and foot. At that time, Palm Beach Holdings was insured by Covington under general liability and no-fault policies. P.M. was enrolled in a Medicare Advantage plan administered by Florida Healthcare Plus. P.M.'s medical providers billed Florida Healthcare Plus for her medical expenses, which the organization paid. Florida Healthcare Plus's alleged right, as a secondary payer, to reimbursement by Covington, as the primary payer, was ultimately assigned to MSPA.

MSPA first notified Covington of its asserted "rights with respect to the P.M. claim" in July 2015. Although the policy covered medical expenses, Covington argued that it was not liable because the expenses were not "reported to Covington within one year of the date of [the] accident," as the policy required. In 2016, Covington settled directly with P.M., and P.M. released her potential claims.

MSPA initially filed this action in the District of New Hampshire and sought double damages under the Medicare Secondary

Payer Act and compensatory damages for breach of contract. The District of New Hampshire transferred this action to the Southern District of Florida. MSPA also moved to certify a class of Medicare Advantage Organizations and assignees of such organizations that Covington, as a primary payer, had allegedly failed to reimburse. The parties filed cross-motions for summary judgment.

The district court adopted the magistrate judge's report and recommendation and granted summary judgment in favor of Covington. It rejected MSPA's arguments and did not address class certification.

Avmed, a Medicare Advantage Organization, assigned to MSP Recovery Claims, Series LLC, its claims to reimbursement by United Auto. MSP relied on a proprietary software to sift through publicly available data and "identify unreimbursed conditional payments made by [Avmed] . . . for which [United Auto] [was] responsible as the primary payer." MSP filed a putative class action in the Southern District of Florida and alleged that defendant United Auto "ha[d] systematically and uniformly failed to honor its primary payer obligation under" the Medicare Secondary Payer Act for "accident-related medical expenses" and had failed to reimburse the class members.

MSP chose two exemplar Medicare beneficiaries to prove its right to recover as Avmed's assignee. The two beneficiaries, identified as "W.T." and "W.M.," were each injured in accidents by holders of United Auto no-fault policies. MSP alleged that, in both

instances, United Auto failed to report its primary-payer status to the government and failed to pay the beneficiary's expenses or reimburse Avmed. It sought double damages under the Act.

The district court granted summary judgment in favor of United Auto. It found that MSP failed to send United Auto a presuit demand letter, as required by Florida law. And it rejected MSP's argument that the Act preempts the Florida statute.

## II. STANDARD OF REVIEW

"We review a district court's decision on summary judgment *de novo* . . . , drawing all inferences in the light most favorable to the non-moving party . . . ." *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).

## III. DISCUSSION

When multiple insurers are liable for a Medicare beneficiary's medical costs—for example, when the beneficiary is entitled to recover from both Medicare and a tortfeasor's liability insurer—liability must be allocated between Medicare and the primary plan. *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1233 (11th Cir. 2016). Under the Medicare Secondary Payer Act, private insurers are "primary" payers and Medicare is the "secondary" payer. *Id.* at 1234; *see* 42 U.S.C. § 1395y(b)(2)(A). If the beneficiary has elected to receive his or her Medicare benefits through a private Medicare Advantage Organization, that organization also qualifies as a secondary payer. *Tenet*, 918 F.3d at 1316–17.

When a "primary plan does not promptly meet its obligations," Medicare or the Medicare Advantage Organization can conditionally "pay the entire amount upfront, so long as the primary plan eventually reimburses Medicare." *Id.* at 1316 (citation and internal quotation marks omitted); *see* 42 U.S.C. § 1395y(b)(2)(B)(i). And if the primary plan fails to reimburse, the secondary payer may sue. The Medicare Secondary Payer Act creates a cause of action for the government, 42 U.S.C. § 1395y(b)(2)(B)(iii), and it also creates a private cause of action under which beneficiaries can receive double damages, *id.* § 1395y(b)(3)(A); *see Tenet*, 918 F.3d at 1316. Medicare Advantage Organizations also "must rely on the private cause of action when they sue." *Tenet*, 918 F.3d at 1317.

We divide our discussion into two parts. First, in the *Covington* appeal, we reject the argument that the Medicare Secondary Payer Act preempts the claims-filing deadline in the Covington insurance policy. Second, in the *United Auto* appeal, we explain that the Act does not preempt Florida's statutory requirement of a pre-suit demand.

## A. The Medicare Secondary Payer Act Does Not Preempt the Claims-Filing Deadline in the Covington Insurance Policy.

MSPA argues that Covington's insurance policy establishes its primary-payer status. *See MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1359 (11th Cir. 2016) (explaining that "responsibility for payment may be demonstrated" by "contractual obligation" (citation omitted)). But an alleged primary payer may "assert any valid contract defense in arguing against [its] liability." *Id.* at

1361. Covington maintains that the one-year claims-filing deadline in its policies constitutes a valid defense.

MSPA contends that the policy deadline is preempted by the Medicare Secondary Payer Act, which provides a three-year claims-filing period:

> Notwithstanding any other time limits that may exist for filing a claim under an *employer group health plan*, the *United States* may seek to recover conditional payments . . . where the request for payment is submitted to the entity required or responsible . . . under a primary plan within the 3-year period beginning on the date on which the item or service was furnished.

42 U.S.C. § 1395y(b)(2)(B)(vi) (emphasis added). In the district court, MSPA did not contend that this provision preempted the deadline in the Covington policy. Instead, it argued that "there is no time-limit for an MAO seeking reimbursement from a primary plan, as the claims-filing provision in 1395y(b)(2)(B)(vi) *does not apply* under the private cause of action."

The district court correctly determined that the claims-filing provision in section 1395y(b)(2)(B)(vi) is "irrelevant." "The starting point for all statutory interpretation is the language of the statute itself." *United States v. DBB, Inc.*, 180 F.3d 1277, 1281 (11th Cir. 1999). The claims-filing provision states that "the *United States* may seek to recover conditional payments" "[n]otwithstanding any other time limits." 42 U.S.C. § 1395y(b)(2)(B)(vi) (emphasis added).

The text unambiguously refers only to actions by the United States. *Cf. Tenet*, 918 F.3d at 1317 (indicating that the specific references to the "United States" limit the government's cause of action, 42 U.S.C. § 1395y(b)(2)(B)(iii), to use by the United States). And even if the provision could benefit a Medicare Advantage Organization, the preemption clause applies only to claims-filing deadlines in employer group health plans. 42 U.S.C. § 1395y(b)(2)(B)(vi) ("Notwithstanding any other time limits that may exist for filing a claim under an *employer group health plan*, the United States may seek to recover conditional payments . . . ."). There is no basis for us to infer that the provision preempts a claims-filing deadline in a no-fault or general liability policy.

MSPA also argues that even if Covington does not qualify as a primary payer through its contractual obligation, Covington is a primary payer due to "its settlement of [an] exemplar claim." *See Allstate*, 835 F.3d at 1359 (explaining that "responsibility for payment may be demonstrated" by a settlement). Covington settled directly with the Medicare beneficiary in the exemplar case. But as the district court ruled, MSPA forfeited this claim by failing to allege it in its complaint.

"A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food & Com. Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989). But "[d]espite the

'liberal pleading standard for civil complaints,' plaintiffs may not 'raise new claims at the summary judgment stage.'" *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1200 (11th Cir. 2015) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004)). Instead, "the proper procedure for plaintiffs to assert a new claim is to amend the complaint." *Gilmour*, 382 F.3d at 1315.

MSPA argues that "the complaint's theory of liability was pled broadly enough to encompass the additional evidence of the settlement agreement." According to MSPA, "[w]hile the settlement agreement may indeed provide an alternative way for MSPA Claims to meet the elements to sustain a private cause of action, that does not make it an altogether new theory that may be ignored at summary judgment." It contends that "settlement is a form of contractual obligation, [and] that the complaint's references to contractual obligations could encompass a settlement once MSPA Claims learned of it."

MSPA's complaint did not give Covington notice of its claim that Covington's primary-payer status could be established based on its settlement with P.M. The amended complaint did not even mention the word "settlement" in a relevant context. It alleged only that "[Covington]'s no-fault and liability policies are primary plans, which rendered [Covington] a primary payer for accident-related medical expenses." A complaint that only "offers 'labels and conclusions[,]' . . . 'a formulaic recitation of the elements of a cause

of action[,]' . . . [or] 'naked assertions' devoid of 'further factual enhancement'" does not suffice to state a legal claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration adopted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

MSPA had the information it needed to plead the claim it now asserts. Covington alerted MSPA to the settlement agreement in March 2020 in its amended answers to MSPA's second set of interrogatories. MSPA filed its motion for summary judgment in March 2021. Even so, MSPA did not amend its complaint in the interim. MSPA responds that "Covington knew full well . . . that MSPA Claims had become aware" of the settlement. But that fact, even if true, would not relieve MSPA of its obligation to follow the pleading requirements and allege in its complaint that the settlement agreement served as a basis for liability.

## B. The Medicare Secondary Payer Act Does Not Preempt Florida's Pre-Suit Demand Requirements.

In *United Auto*, the district court granted summary judgment in favor of United Auto after finding that MSP was required under Florida law to send United Auto "a pre-suit demand letter . . . but admits it did not." The relevant Florida statute, the Florida Motor Vehicle No-Fault Law, requires that a prospective plaintiff send notice of intent to litigate to an insurer:

> As a condition precedent to filing any action for benefits under this section, written notice of an intent to initiate litigation must be provided to the insurer.

> Such notice may not be sent until the claim is over-
> due, including any additional time the insurer has to
> pay the claim . . . .

FLA. STAT. § 627.736(10)(a). The statute also guarantees the insurer a 30-day cure period before it can be sued. *Id.* § 627.736(10)(d). In Florida, all automobile-liability policies are "deemed to incorporate the provisions of the Florida Motor Vehicle No-Fault Law." *Id.* § 627.7407(2).

MSP makes two arguments on appeal. First, it contends that our precedents compel the conclusion that the Medicare Secondary Payer Act preempts section 627.736(10)(a) of the Florida Statutes. Second, it argues that even if our precedents do not compel that conclusion, we should reach it now as a matter of first impression. Both arguments fail.

MSP first cites *MSP Recovery Claims, Series LLC v. ACE American Insurance Co.*, 974 F.3d 1305 (11th Cir. 2020), for the proposition that the Act preempts Florida's pre-suit demand requirement. In that decision, we rejected the primary payers' argument that "Plaintiffs failed to comply with the[] supposed pre-suit notice requirements." *Id.* at 1318. The panel stated that "Defendants *point to no law* that obligated Plaintiffs to submit 'recovery demand letters' or otherwise provide advance notice of their intent to bring a claim." *Id.* at 1319 (emphasis added). The *ACE* Court did not mention section 627.736(10)(a) or preemption. Instead, it explained that the *federal* regulation that the defendants cited "contemplate[d] that primary payers' liability arises *not only* after the

primary payer receives a recovery demand letter *but also* in cases in which" the primary payer's responsibility is demonstrated in another fashion. *Id.* (first emphasis added) (citing 42 C.F.R. § 411.22).

*ACE* does not control. MSP admits that the inference "that a state law pre-suit demand requirement . . . is impliedly preempted by federal law" represents a rationale that "the [*ACE*] Court did not express." And MSP fails to explain how that rationale was necessary to our holding.

MSP also argues that *Humana* supports its position. 832 F.3d 1229. There, we determined that the defendant primary payer, Western Heritage Insurance, had constructive knowledge that the plaintiff Medicare Advantage Organization had made a payment, so Western Heritage was required to reimburse the organization. *Id.* at 1239–40. According to MSP, because constructive knowledge is sufficient to obligate a primary payer to reimburse a Medicare Advantage Organization, "[i]mposing a[n] [additional] state-law formal demand requirement would conflict with this low federal statutory threshold to the federal right of action."

We disagree. Our decision in *Humana* did not foreclose the possibility that state-law procedural requirements could be superimposed. And the pre-suit demand requirement of section 627.736(10)(a) was not at issue. So that decision does not control this appeal.

MSP also argues that our decision in *MSPA Claims 1, LLC v. Kingsway Amigo Insurance Co.*, 950 F.3d 764 (11th Cir. 2020), supports its position. There, we stated that we had "recognized (as relevant [t]here) only two limits on the [Medicare Secondary Payer Act's] private cause of action": first, a Medicare Advantage Organization must "demonstrate[]" "the would-be primary payer's responsibility" before suing for reimbursement; and second, "plaintiffs . . . may only sue primary plans when they fail to pay, and not other entities such as medical providers." *Id.* at 771 (citations and internal quotation marks omitted). According to MSP, because constructive knowledge can satisfy the first criterion, "[i]t would be inconsistent to require actual knowledge through a pre-suit demand requirement."

MSP reads too much into *Kingsway*, where we carefully cabined the statement at issue: the two limitations identified were the only ones "relevant [t]here." *Kingsway*, 950 F.3d at 771. It does not necessarily follow that additional state procedural requirements, such as a demand requirement, are preempted. And again, whether the Medicare Secondary Payer Act preempts section 627.736(10)(a) was not at issue.

MSP suggests that even if our precedents do not compel the conclusion, we should hold as a matter of first impression that the Medicare Secondary Payer Act preempts section 627.736(10)(a). But the doctrine of preemption is derived from the Supremacy

Clause. *See* U.S. CONST. art. VI, cl. 2. And that doctrine does not apply here.

"[W]e generally recognize three classes of preemption." *United States v. Alabama*, 691 F.3d 1269, 1281 (11th Cir. 2012). Field preemption exists "when a congressional legislative scheme is so pervasive" that we can reasonably infer "that Congress left no room for the states to supplement it." *Id.* (citation and internal quotation marks omitted). "[E]xpress preemption . . . arises when the text of a federal statute explicitly manifests Congress's intent to displace state law." *Id.* And conflict preemption may occur "when it is physically impossible to comply with both the federal and the state laws" or "when the state law stands as an obstacle to the objective of the federal law." *Id.* (citations omitted). MSP admits that field preemption does not apply.

"[W]e follow two considerations when determining whether a federal statute preempts state law." *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1253 (11th Cir. 2022). "First, we look at Congress's purpose in enacting the federal law." *Id.* And "[s]econd, we are guided by the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id.* (citation and internal quotation marks omitted).

The Medicare Secondary Payer Act does not expressly preempt section 627.736(10)(a). We have no reason to conclude from the text of the Act that Congress's purpose in shifting

primary-payer responsibility to private insurers to "curb the rising costs of Medicare," *Humana*, 832 F.3d at 1234, included preempting state procedural laws governing insurance liability. And there is no evidence that Congress sought to broadly preempt the insurance regulatory regimes traditionally administered by states. *See, e.g.*, *Caldera v. Ins. Co. of the State of Pa.*, 716 F.3d 861, 865 (5th Cir. 2013) ("[A]n MSP claimant may not recover amounts from a purported 'primary plan' in excess of a carrier's responsibility under state law or the relevant contract."); *Cal. Ins. Guarantee Ass'n v. Azar*, 940 F.3d 1061, 1064 (9th Cir. 2019) ("Nothing in the Medicare statute or its implementing regulations suggests that Congress meant to interfere with state schemes designed to protect against insurer insolvencies."), *abrogation on other grounds recognized by R.J. Reynolds Tobacco Co. v. Cnty. of Los Angeles*, 29 F.4th 542, 553 n.6 (9th Cir. 2022); *Ocean Harbor Cas. Ins. v. MSPA Claims, 1*, 261 So. 3d 637, 645 (Fla. Dist. Ct. App. 2018) ("The Secondary Payer Act was never intended to broadly preempt State insurance law.").

The Act also does not give rise to conflict preemption. MSP does not assert that it is "physically impossible" to comply with both the Medicare Secondary Payer Act and the pre-suit demand requirement of Florida law. And the pre-suit demand requirement does not create an unconstitutional obstacle to a Medicare Advantage Organization's reimbursement.

"We use our judgment to determine what constitutes an unconstitutional obstacle to federal law, and this judgment is

informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Club Madonna*, 42 F.4th at 1253 (citation and internal quotation marks omitted). The Supreme Court has explained that a state law poses an unconstitutional obstacle when "the purpose of the [federal] act cannot otherwise be accomplished," "its operation within its chosen field . . . [is] frustrated," or "its provisions [are] refused their natural effect." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (citation omitted).

Florida's pre-suit demand requirement does not meet this relatively high bar. The statutory notice requirement and corresponding 30-day cure period are procedural requirements that may result in a brief delay. But the Florida law does not prevent or meaningfully impede the reimbursement of Medicare Advantage Organizations that Congress sought to facilitate. *See Humana*, 832 F.3d at 1234 (explaining that the purpose of the Medicare Secondary Payer Act was to shift primary-payer responsibility to private insurers to "curb the rising costs of Medicare"). So, the provision does not create an unconstitutional obstacle to the purposes or operation of the Medicare Secondary Payer Act.

## IV. CONCLUSION

We **AFFIRM** the judgments in favor of Covington and United Auto.

21-12439          Rosenbaum, J., Dissenting in Part          1

ROSENBAUM, Circuit Judge, Concurring in Part and Dissenting in Part:

I join all but the last paragraph of the Majority Opinion. In my view, the Majority Opinion correctly affirms the judgment for Covington but errs in finding that Florida Statutes § 627.736(10)(a) isn't preempted by the Medicare Secondary Payer Act (the "Act"). Rather, the Florida statute is preempted by the Act because the Florida statute frustrates the Act's purpose—reducing Medicare's costs—by shifting the burden of seeking reimbursement from where Congress placed it (on the private insurer) back to Medicare.

I would vacate the entry of judgment for United Auto on this ground and remand for further proceedings.[1]

## I.

Before 1980, if Medicare and a private insurer both covered the same medical expenses, then Medicare would cover the entire amount (within its scope). *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1234 (11th Cir. 2016). Given this state of affairs, private insurers understandably didn't make much of an effort to cover their insureds' costs; it was cheaper to let Medicare pick up the tab. *Bio-Med. Applications v. C. States Se. and Sw. Areas Health and Welfare Fund*, 656 F.3d 277, 278 (6th Cir. 2011) ("Before the [MSP] Act, Medicare paid for all medical treatment

---

[1] United Auto moved for summary judgment on several grounds and the district court decided only one.

2                    Rosenbaum, J., Dissenting in Part            21-12439

within its scope and left private insurers merely to pick up whatever expenses remained."). The result? Medicare's costs rose. *Humana*, 832 F.3d at 1234.

In response, Congress passed the Medicare Secondary Payer Act, flipping the burden to private insurers to find and cover medical expenses. *Id.* Under the new system, where two plans covered the same costs, the private insurer had to pay first—always—and Medicare would step in "as a last resort." *Id.* In the statute's parlance, the private insurers are "primary payers" and Medicare is a "secondary payer."[2]

Sometimes, primary payers don't pay promptly—like when the tortfeasor is contesting liability. *MSPA Claims 1, LLC v. Tenet Fla. Inc.*, 918 F.3d 1312, 1316 (11th Cir. 2019). When that happens, the injured person still has medical bills to pay, so Medicare pays in the first instance and the primary payer (in theory) reimburses Medicare. *Id.*

But there is a problem with this set-up: Medicare doesn't always know whether there *is* a primary payer. "[I]nsured

---

[2] In the 1990s, Congress added a provision that would allow private entities—Medicare Advantage Organizations—to administer Medicare benefits. *Id.* at 1317. Like Medicare, Medicare Advantage Organizations are secondary payers. *Id.* Because Medicare Advantage Organizations "stand in the shoes of Medicare"—at least in these circumstances—I refer to them both as "Medicare." *MSPA Claims 1, LLC v. Tenet Fla. Inc.*, 918 F.3d 1312, 1317 (11th Cir. 2019).

21-12439          Rosenbaum, J., Dissenting in Part                    3

individuals (and other private entities) are often in a better position than the government to know about the existence of responsible plans." *Tenet*, 918 F.3d at 1316. So once a private insurer knows that it is a primary payer, the private insurer must (1) tell Medicare and (2) reimburse Medicare. *See* 42 C.F.R. §§ 411.22(a); 411.25(a).[3]

The Act provides private insurers a strong incentive to comply with these obligations. If a private insurer finds out that Medicare covered an expense for a plan participant and the private insurer reimburses Medicare, the private insurer must reimburse only the amount Medicare paid. *See* 42 U.S.C. § 1395y(b)(2)(B)(iii); 42 C.F.R 411.24(c)(1). But if the private insurer *doesn't* fulfill its obligation and if Medicare must sue, then the private insurer pays *twice* the amount Medicare paid. 42 U.S.C. §§ 1395y(b)(2)(B)(iii); 1395y(b)(3)(A); 42 C.F.R. § 411.24(c)(2). This double-recovery provision gives "the reimbursement requirement some teeth." *Tenet*, 918 F.3d at 1316. Thus, in the ordinary course, private insurers must affirmatively seek out secondary payments to their insureds and reimburse Medicare. If they wait for Medicare to come to them, they risk getting hit with double damages. That is the balance Congress struck—with private insurers as the actors and Medicare as the passive recipients.

---

[3] To further bolster the scheme, private insurers also have reporting requirements through which they must tell Medicare about their plan participants and claimants. *See* 42 U.S.C. § 1395y(b)(7)–(8); *Ill. Ins. Guar. Fund v. Becerra*, 33 F.4th 916, 918 (7th Cir. 2022).

Florida's pre-suit demand requirement upsets this balance. Under Florida Statutes § 627.736(10)(a), an insurance company in Florida cannot be sued until *after* a demand letter is sent—plus a 30-day cure period.  In other words, if Medicare finds that a private insurer in Florida is a primary plan, before Medicare can sue, it must first send a demand to the private insurer and give the private insurer 30 days to pay.

Florida's law thus flips the burden on which party must seek out the other from where Congress placed it (on the private insurer) to the secondary payer.  Therefore, Florida's pre-suit demand requirement "frustrates" Congress's purpose of having private insurers act by removing their incentive to do so.

## II.

As the Majority Opinion correctly recounts, a state law is preempted when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hillman v. Maretta*, 569 U.S. 483, 490 (2013) (citation omitted).  There is a "presumption against pre-emption" where the state law governs traditional state interests, so the state law must do "major damage" to "clear and substantial" federal interests "before the Supremacy Clause will demand that state law will be overridden." *Id.* at 490–91 (citation omitted).  But state law is not "entirely insulated" from conflict pre-emption principles." *Id.* at 491 (citing *Ridgway v. Ridgway*, 456 U.S. 46, 55 (1981)).  Whether a state law stands as a "sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying

21-12439          Rosenbaum, J., Dissenting in Part          5

its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).

"To determine whether a state law conflicts with Congress' purposes and objectives, we must first ascertain the nature of the federal interest." *Hillman*, 569 U.S. at 491.  Then, "if [the federal law's] operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power." *Smith v. Psych. Sols., Inc.*, 750 F.3d 1253, 1258 (11th Cir. 2014) (citing *Crosby*, 530 U.S. at 373).

Here, Congress's purpose and objective is easy to discern: saving money.  "The transformation of Medicare from the primary payer to the secondary payer with a right of reimbursement reflects the overarching statutory purpose of reducing Medicare costs." *Zinman v. Shalala*, 67 F.3d 841, 845 (9th Cir. 1995) (citing H.R. Rep. No. 1167, 96th Cong., 2d Sess. 352 (1980), *reprinted in* 1980 U.S.C.C.A.N. 5526, 5717)).  As the House Report put it,

> Medicare has served to relieve private insurers of obligations to pay the costs of medical care in cases where there would otherwise be liability under the private insurance contract.  The original concerns that prompted inclusion of this program policy in the law—the administrative difficulties involving in ascertaining private insurance liability and the attendant delays in payment—no longer justify retaining the policy, particularly if it is understood that

6                  Rosenbaum, J., Dissenting in Part          21-12439

> immediate payment may be made by Medicare with
> recovery attempts undertaken only subsequently
> when liability is established.

No. 1167, 96th Cong., 2d Sess. 352 (1980), *reprinted in* 1980 U.S.C.C.A.N. 5526, 5752) (capitalization removed). And Congress added the double-damages provision to "facilitate recovery of conditional payments." *Stalley v. Methodist Healthcare*, 517 F.3d 911, 915–16 (6th Cir. 2008). Indeed, "[t]he MSP also creates a private right of action with double recovery to encourage private parties who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights." *Glover v. Liggett Grp., Inc.* 459 F.3d 1304, 1307 (11th Cir. 2006).

But Florida's pre-suit demand statute turns this carefully balanced scheme upside down. Here's how the pre-suit demand requirement plays out. As the statutory text and history show Congress intended things, an insurance company must affirmatively seek out secondary payments by Medicare and reimburse Medicare—or risk being sued for double damages.

But Florida insurance companies are effectively exempt from this requirement. They can wait until Medicare has approached them through a demand letter for payment and then reimburse Medicare during Florida's 30-day cure period without ever fearing double damages. Florida insurance companies can be safely passive, secure in the knowledge that if Medicare comes to them, they will have at least thirty days before being at risk of double damages. Therefore, Florida private insurers can *know* that they

21-12439          Rosenbaum, J., Dissenting in Part          7

owe Medicare money but also that they need pay Medicare back if and only if Medicare comes to them. And sometimes, Medicare won't know and will have to absorb the cost. So we are right back where we started before Congress acted: Medicare's costs will rise. Therefore, Florida's pre-suit demand require "frustrates" Congress's purpose.

I respectfully dissent.